950 A.2d 798

**ATTORNEY GRIEVANCE COMMISSION of Maryland**

v.

**H. Allen WHITEHEAD.**

Misc. AG No. 53, Sept. Term, 2006.

Court of Appeals of Maryland.

June 19, 2008.

242

Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland, for petitioner.

Peter Axelrad of Annapolis, for respondent.

Argued before BELL, C.J.,\*RAKER, HARRELL, BATTAGLIA, GREENE, MURPHY, and CATHELL, DALE R. (retired, specially assigned), JJ.

BATTAGLIA, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a petition for disciplinary or remedial action against Respondent, H. Allen Whitehead on December 12, 2006. Bar Counsel alleged that Respondent violated Maryland Rules of Professional Conduct ("MRPC") 1. 15, governing the safekeeping of property,[2] MRPC 8.4(a),

---

\* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

1. Maryland Rule 16–751(a) provides:
 (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of [the Attorney Grievance] Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MRPC 1. 15, as applicable in this case, provided in relevant part:
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
 \* \* \*
 (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
 (e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly

(b), (c) and (d), governing attorney misconduct,[3] Maryland Rule 16–609, prohibiting certain transactions,[4] and Sections

---

distribute all portions of the property as to which the interests are not in dispute.

The Rule was revised, effective January 1, 2008, to state:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

\* \* \*

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

3. Rule 8.4 states in pertinent part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice. . . .

4. Maryland Rule 16–609, as applicable to this case, stated:

An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

10–306 and 10–307 of the Business Occupations and Professions Article, Maryland Code (1989, 2000 Repl.Vol.), limiting the use of trust money and subjecting those who inappropriately use trust money to disciplinary proceedings.[5]

In accordance with Maryland Rules 16–752(a) and 16–757(c),[6] we referred the petition to Judge Diane O. Leasure of the Circuit Court for Howard County for an evidentiary

The Rule was revised, effective January 1, 2008, to state:
a. **Generally.** An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.
b. **No cash disbursements.** An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.
c. **Negative balance prohibited.** No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

5. Section 10–306 of the Business Occupations and Professions Article, Maryland Code (1989, 2000 Repl.Vol.) states:
A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.
Section 10–307 of the Business Occupations and Professions Article, Maryland Code (1989, 2000 Repl.Vol.) states:
A lawyer who willfully violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10–303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide.

6. Maryland Rule 16–752(a) states:
(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing. Maryland Rule 16–757(c) states in pertinent part:
(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.

hearing and to make findings of fact and conclusions of law. Judge Leasure held an evidentiary hearing on August 1, 2007; a September 26, 2007 Order of this Court granted an extension for submission of the court's findings and conclusions. On October 4, 2007, Judge Leasure issued the following Findings of Fact and Proposed Conclusions of Law, in which she found by clear and convincing evidence that Respondent had violated MRPC 1.15 and 8.4(a), (c) and (d), as well as Sections 10–306 and 10–307 of the Business Occupations and Professions Article, Maryland Code (1989, 2000 Repl.Vol.): [7]

## Findings of Fact

"The relevant facts are, for the most part, not in dispute. Based upon the testimony and evidence presented at the hearing, the Court makes the following findings of fact.

1. The Respondent was admitted to the Bar of the Court of Appeals of Maryland on December 1, 1973.

2. The Respondent was admitted to the Bar of the District of Columbia in 1991 and to the Bar of the State of New York in 1997.

3. The Respondent was appointed as the Conservator [8] of the Estate of Reginald V. Grayson, Jr., an adult disabled ward, on September 16, 1999 by the Superior Court of the District of Columbia. Although he had been appointed as a trustee in the past, this was his first appointment as a conservator.

4. By his own admission, the Respondent thought being appointed as a conservator entailed the same obligations that he had when he served as a trustee. He acknowledged that he had not familiarized himself with the applicable

---

7. During the course of the hearing, the judge dismissed the counts alleging violations of 8.4(b) and Maryland Rule 16–609.

8. A conservatorship "authorizes the management of property for the benefit of either a minor or a person otherwise disabled." Amy M. Hess, George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees,* § 13 (3d. ed.2007).

District of Columbia rules [9] regarding this type of appointment.

5. During the time he served as the Conservator of the estate, the Respondent submitted petitions for the payment of legal fees; no orders authorizing the requested payments were issued.

6. During the period of time that he served as the Conservator for the estate, the Respondent took two actions without obtaining prior court approval: (i) he paid legal fees of $40,200 to himself; and (ii) he made a loan of $600,000 of estate assets to purchase property in New York City that was titled in his name and that of his business partner, Aric Johnson.

7. The property, which was the subject of the real estate transaction, is an eight unit rent-stabilized residential building located in Greenwich Village; the address of the property is 30 Perry Street, New York City, New York 10014. The building was being purchased as an investment property for the Respondent and his business partner. A Note, Mortgage, and Assignment of Rents and Leases secured the loan from the estate. The $600,000 Note was to be paid on a 30-year amortization schedule, but due in 2005 at an interest rate of 7.5%.

8. The subject real estate transaction was disclosed on the various accountings filed by the Respondent in his capacity as the Conservator of the estate.

---

9. District of Columbia Rules of Probate Court 5(c) states:

No fiduciary, without prior Court approval, shall purchase for the fiduciary's personal account or for any account in which the fiduciary is personally interested any asset held by the fiduciary, nor shall the fiduciary sell to himself or herself, as fiduciary, any asset in which the fiduciary has any personal or financial interest. Upon a petition by the fiduciary disclosing all pertinent facts and showing that either the trust instrument or will authorizes such a transaction, or that the beneficiary or ward has knowingly consented or that the transaction is in the best interest of the estate, trust, ward or beneficiary and after notice of the petition to all parties and affected persons and a hearing, the Court may approve the transaction.

9. The Respondent requested that an outside auditor review the estate's accounts and he received permission to do so. When the outside auditor questioned the propriety of the Respondent paying himself legal fees from the estate without prior court approval, he repaid the fees to the estate.

10. When the Probate Division of the Superior Court of the District of Columbia raised questions regarding the propriety of the real estate transaction, the Respondent refinanced the property in July 2003 and repaid the Note in full, thus returning the assets, along with interest, to the estate.

11. In October 2003, the Hon. Kaye K. Christian, a judge of the Superior Court of the District of Columbia issued a Show Cause Order against the Respondent. The Show Cause Order was issued in response to allegations that (i) the Respondent paid legal fees to himself without prior court approval; and (ii) that the Respondent entered into a mortgage investment transaction, utilizing $600,000 of the conservatorship estate assets, for the purchase of property located in New York City owned by the Respondent and his business partner, Aric Johnson.

12. The Respondent sent a letter to Judge Christian (dated November 26, 2003) in which he tendered his resignation as the Conservator of the estate. In this letter, the Respondent made the following statements regarding the real estate transaction: (i) he knew that his actions were a violation of Probate Rule 5 (which he admitted he had not familiarized himself with); and (ii) that he now saw how this could be considered a conflict of interest.

13. The Show Cause hearing was held after which Judge Christian entered an Order. In the Order, Judge Christian noted that the Respondent admitted that he paid legal fees in the amount of $40,200 to himself without prior authorization and that he entered into a self-dealing mortgage investment transaction.

14. Judge Christian denied the Respondent's request to resign as the Conservator and, as a result of his payment of

legal fees to himself, without prior court approval, removed him as the Conservator of the estate.

15. The District of Columbia Bar Counsel thereafter initiated disciplinary proceedings against the Respondent. The Respondent represented himself during these proceedings and consented to disbarment from the Bar of the District of Columbia.

16. After the Respondent was disbarred in the District of Columbia, the Attorney Grievance Commission of Maryland filed a petition for reciprocal disciplinary action. The Court of Appeals held that the Respondent's conduct in taking fees from funds held in trust without prior court approval warranted an indefinite suspension rather than disbarment under Maryland law, *Attorney Grievance v. Whitehead,* 390 Md. 663, 890 A.2d 751 (2006), and indefinitely suspended him from the practice of law with the right to reapply after 18 months.

17. As a result of another reciprocal proceeding in the State of New York, on December 12, 2006, the Respondent was suspended from the practice of law in the State of New York for a period of 18 months. The Supreme Court of the State of New York determined that the sanction of disbarment would be excessive based upon the established facts.

## Discussion

Since the basis of the indefinite suspension in Maryland was the fact that Respondent paid legal fees to himself without prior authorization, the present action is based solely upon the allegations surrounding the real estate transaction. The Respondent does not dispute the fact that he utilized $600,000 in estate funds to purchase real estate he owned with his business partner. The Respondent argues that he did not intend to take money improperly and that his actions resulted in no loss to the estate.

### I. MRPC 1.15: Safekeeping Property.

Rule 1.15 obligates a lawyer to hold property of clients (or others) that is in lawyer's possession separate from the lawyer's own property.

The Petitioner claims that the Respondent violated this Rule by using estate funds to purchase real estate in New York City titled in the names of Respondent and his business partner, Aric Johnson; in essence, that the Respondent engaged in self-dealing. The Respondent argues that there was no self-dealing because the District of Columbia authorities were aware of the mortgage, since it was referenced in various estate filings made with the court. The Respondent additionally argues that the estate financially benefitted from this transaction since the mortgage interest rate was not less than the market value for similar real estate transactions.

Based upon the testimony and evidence received at the hearing, the court finds by clear and convincing evidence that the Respondent is in violation of the MRPC 1.15 by utilizing estate property for his own benefit. Although the court believes the Respondent was sincere in his desire to maximize the assets of the estate, the manner in which he chose to do so is a clear conflict of interest.

## II. MRPC 8.4: Misconduct.

The Petitioner alleges that the Respondent violated MRPC 8.4(a), (c) and (d).[1]

---

1. **Rule 8.4: Misconduct**

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

---

The Court finds that the Respondent clearly knew what he was doing when he utilized estate funds to purchase real property that he would personally own and that he exhibited

poor judgment in doing so. Although his actions may not have been a deliberate attempt to deceive, the net effect of his actions is that he engaged in self-dealing. As a result, the court finds by clear and convincing evidence that the Respondent violated MRPC 8.4.

### III. Md.Code Ann., Bus. Occ. & Prof. § 10–306.

This section provides that a lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer. Although the Respondent was acting in the role of a conservator, as opposed to a trustee, the obligation to safeguard the assets of the estate are the same.

The Respondent readily admitted during the hearing that he had not bothered to read the District of Columbia Code or rules governing conservatorships. Had he taken the time to do so, he would have more than likely known that prior court approval was needed regarding investing estate assets in a real estate venture in which he was a principal.

The court does not find that the Respondent harbored a nefarious intent to deprive the estate of its assets. The court does find, however, that the Respondent's actions resulted in monies entrusted to him being utilized for unauthorized investments. For that reason, the court finds by clear and convincing evidence that the Respondent violated the provisions of this statute.

### IV. Md.Code Ann., Bus. Occ. & Prof. § 10–307.

This section provides the statutory basis for a disciplinary proceeding to be initiated. The court finds by clear and convincing evidence that the Respondent's actions established the requisite willfulness for the instant disciplinary action to be maintained. The court further notes that during the District of Columbia disciplinary proceedings, and in his letter to Judge Christian, the Respondent admitted that his actions violated the rules.

## STANDARD OF REVIEW

 In proceedings involving attorney discipline, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance v. Harris*, 403 Md. 142, 155, 939 A.2d 732, 740 (2008); *Attorney Grievance v. Nussbaum*, 401 Md. 612, 632, 934 A.2d 1, 12 (2007); *Attorney Grievance v. Mininsohn*, 380 Md. 536, 564, 846 A.2d 353, 369–70 (2004). In our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. Maryland Rule 16–759(b)(2);[10] *Harris*, 403 Md. at 155–56, 939 A.2d at 740; *Nussbaum*, 401 Md. at 632, 934 A.2d at 12; *Mininsohn*, 380 Md. at 564, 846 A.2d at 370. As to the hearing judge's conclusions of law, such as whether provisions of the MRPC were violated, our consideration is essentially *de novo*. Maryland Rule 16–759(b)(1);[11] *Harris*, 403 Md. at 156, 939 A.2d at 740; *Nussbaum*, 401 Md. at 632, 934 A.2d at 13; *Mininsohn*, 380 Md. at 564, 846 A.2d at 370.

## DISCUSSION

Respondent took exceptions to the hearing judge's findings of fact and conclusions of law, both of which we shall discuss.[12]

---

**10.** Maryland Rule 16–759(b)(2) provides:

(2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757 (b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

**11.** Maryland Rule 16–759(b)(1) states:

(b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

**12.** In a letter filed January 22, 2008, Respondent also noted that four exhibits, referred to in Petitioner's Exceptions and Recommendations for Sanction, were not admitted into evidence. Petitioner subsequently

Petitioner took no exceptions to the findings of fact and conclusions of law.

## A. Respondent's Exceptions to Findings of Fact

█ Respondent excepts to finding of fact number 10 of the hearing judge, which states: "When the Probate Division of the Superior Court of the District of Columbia raised questions regarding the propriety of the real estate transaction, the Respondent refinanced the property in July 2003 and repaid the Note in full, thus returning the assets, along with interest, to the estate." Respondent argues that there is no evidence to support that portion of the finding regarding his impetus to repay the money; he refers to finding of fact number 8, which states, "The subject real estate transaction was disclosed on the various accountings filed by the Respondent in his capacity as the Conservator of the estate," and finding of fact number 9, which states, "The Respondent requested that an outside auditor review the estate's accounts and he received permission to do so. When the outside auditor questioned the propriety of the Respondent paying himself legal fees from the estate without prior court approval, he repaid the fees to the estate." Respondent also relies on an April 25, 2006, memorandum from an investigator for Bar Counsel to Assistant Bar Counsel, an exhibit introduced at the hearing, in which the investigator reports that the Court Auditor of the Probate Division of the Superior Court of the District of Columbia was aware of the $600,000 loan and the fact that it had been repaid with interest when stating that there was nothing to cause him concern.

As previously discussed, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. *See, e.g. Harris*, 403 Md. at 155–56, 939 A.2d at 740. Although Respondent argues that there is nothing in the record demonstrating that Respondent's impetus for repaying the conserva-

---

filed Amended Exceptions and Recommendation for Sanction, which omitted reference to the non-admitted exhibits; those exhibits have not been considered.

torship in July of 2003 was in response to questions raised by the Probate Division, we disagree; the hearing judge clearly relied upon representations made by Respondent's counsel during opening statements:

> In late '02, Your Honor, he got an inquiry from the probate department about the mortgage, they're asking questions about it. In other words, they knew about the mortgage, they knew everything, but they had a different question. And he answered the question and he thought about this— and you'll hear from him, obviously—as '03—year '03 came about and he said, you know, they asked the question how— maybe they know something about this stuff I shouldn't have done. So he reversed everything. Borrowed the money, all the money was given back.

Those representations are supported by a November 18, 2002 letter, admitted into evidence, about which the Respondent testified, from the Estate Auditor of the Superior Court of the District of Columbia to Respondent, which stated:

> A review of the file herein indicates that the following additional requirements are necessary for presentation of the
>
> *First and Second Account(s)* to the Court for approval:
>
>> Please file a copy of the original mortgage note receivable as the curtailments of the note have been previously filed. The curtailment schedule reflects an ending mortgage note receivable balance for the Second account of $592,531.45. In addition, please file copies of all documentation related to the creation of the mortgage note receivable.
>
> Please file the above requirement(s) *within (20) days* from the date hereof, otherwise, your failure to comply must be brought to the attention of the Court and the fiduciary shall be subject to removal pursuant to *Rule 309*.

The First and Second Accounting, Summary of Transactions, also admitted into evidence, only referenced the mortgage as "Mortgage receivable on 30 Perry Street, New York, NY" without referencing in whom the property was titled. We,

therefore, conclude that finding number 10 is supported by clear and convincing evidence.

*B. Respondent's Exception to Conclusions of Law*

■ No exception was taken to the hearing judge's conclusions that Respondent violated MRPC 1.15 as well as Sections 10–306 and 10–307 of the Business Occupations and Professions Article, Maryland Code (1989, 2000 Repl.Vol.). Having reviewed the hearing judge's conclusions of law *de novo*, we conclude, nevertheless, that Respondent's conduct violated MRPC 1.15, governing the safekeeping of property, specifically the $600,000 withdraw of conservatorship assets, and Sections 10–306 and 10–307 of the Business Occupations and Professions Article, Maryland Code (1989, 2000 Repl.Vol.), limiting the use of trust money and subjecting those who inappropriately use trust money to disciplinary proceedings.

■ We next address Respondent's violations of MRPC 8.4(a), (c) and (d). During the course of the hearing, the judge granted a motion to dismiss the alleged violation of 8.4(b) and determined that Respondent violated Rules 8.4(a), (c) and (d), which state, in pertinent part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice. . . .

The hearing judge found "that the Respondent clearly knew what he was doing when he utilized estate funds to purchase real property that he would personally own and that he exhibited poor judgment in doing so. Although his actions may not have been a deliberate attempt to deceive, the net effect of his actions is that he engaged in self-dealing." De-

spite the hearing judge's conclusion and dismissal of only 8.4(b), Respondent has only excepted to the conclusion that 8.4(c) was violated. During oral argument Respondent's attorney acknowledged that he had not taken exception to the conclusions of law relative to 8.4(a) and (d), because 8.4(c) was the "key thing."

Respondent asserts that he did not misappropriate funds because he did not intend to take the money, but rather, wanted to benefit the conservatorship. He also argues that he lacked specific intent to defraud or act deceitfully under 8.4(c) because the hearing judge found that his acts were not "a deliberate attempt to deceive" and that he did not "harbor[ ] a nefarious intent to deprive." Finally he contends that his was an act of negligence, rather than intent, because he did not know the rules concerning conservatorships. We disagree.

Respondent's removal of the $600,000 without court approval was clearly a misappropriation. We consistently have held that intentional misappropriation is a violation of Rule 8.4(c), *see Attorney Grievance v. Webster,* 402 Md. 448, 466, 937 A.2d 161, 171 (2007); *Attorney Grievance v. McCulloch,* 397 Md. 674, 683, 919 A.2d 660, 665 (2007); *Attorney Grievance v. Kapoor,* 391 Md. 505, 527–29, 894 A.2d 502, 515–16 (2006); *Attorney Grievance v. James,* 385 Md. 637, 664, 870 A.2d 229, 245 (2005); *Attorney Grievance v. Zdravkovich,* 381 Md. 680, 704, 852 A.2d 82, 96 (2004); *Attorney Grievance v. Snyder,* 368 Md. 242, 260, 793 A.2d 515, 525–26 (2002), and have held in *Attorney Grievance v. Vanderlinde* that a lawyer violated MRPC 8.4(c) when she took money from her employer even though she replaced the money before the cessation of her employment. 364 Md. 376, 385–86, 773 A.2d 463, 468–69 (2001). *See also Attorney Grievance v. Pattison,* 292 Md. 599, 608, 441 A.2d 328, 332 (1982) (finding Rules violation because "[i]t is fundamental that a fiduciary may not make a loan, secured or unsecured (as was this), unto himself").

Respondent asserts that his was not an "intentional" misappropriation because he acted to benefit the estate. In this, he confuses intent with motive. We have previously discussed

the difference between intent and motive when evaluating Rule 8.4 violations in *Attorney Grievance v. Potter,* 380 Md. 128, 153, 844 A.2d 367, 382 (2004):

In finding no violation of Rule 8.4, the hearing judge focused on respondent's motive, rather than on his intent. For example, the hearing judge determined that, based on respondent's motive of protecting the clients' interests, respondent did not remove the files or delete the computer records "to be dishonest or deceitful." The hearing judge erred in concluding that the removal of the files was not a violation of Rules 8.4(c) and (d). Regardless of respondent's motive, *i.e.,* his purported desire to protect the interests of the clients, his conduct was dishonest and deceitful.

In the instant case, Respondent's motivation, described by the hearing judge as a "desire to maximize the assets of the estate," does not affect the violation of 8.4(c) because he intentionally took the money out of the conservatorship; its utilization, or lack thereof, does not alter the character of the misappropriation.

Respondent argues that he did not engage in dishonesty, fraud, deceit or misrepresentation because he believed a higher rate of interest was available through the mortgage. Respondent relies upon *Attorney Grievance v. Siskind,* 401 Md. 41, 930 A.2d 328 (2007), to argue that specific intent is required to demonstrate that an act was fraudulent in fact. In *Siskind,* we stated that "if the *conduct* involved *fraud,* intent would become a relevant consideration in whether there was a violation of MRPC 8.4(c)." *Id.* at 69, 930 A.2d at 344 (emphasis in original). *See also Attorney Grievance v. Mba–Jonas,* 397 Md. 690, 697, 919 A.2d 669, 674 (2007) (affirming hearing court's conclusion that there was no Rule 8.4(c) violation if "respondent did not have the intent to deceive" when the "offenses occurred due to sloppiness, not dishonesty"). Even assuming that the proof in the instant case did not rise to proof of fraud or deceit, we would note that 8.4(c) also is violated by dishonest acts in addition to misrepresentation. In this regard, we have noted that, " 'specific intent is not a necessary ingredient of *dishonesty or misrepresentation.*' "

*Siskind,* 401 Md. at 69, 930 A.2d at 344 (emphasis added), quoting *Attorney Grievance v. Reinhardt,* 391 Md. 209, 222, 892 A.2d 533, 540 (2006).

The hearing judge found that Respondent "made a loan of $600,000 of estate assets to purchase . . . an investment property for the Respondent and his business partner" and that "the net effect of [Respondent's] actions is that he engaged in self-dealing." We have previously held that self-dealing implicates dishonesty. *Harris,* 403 Md. at 164–65, 939 A.2d at 745–46. In *Harris,* we concluded that an attorney was certainly dishonest when he executed a transfer order giving him sole ownership of a fund, although he was not entitled to sole ownership, and determined that he violated 8.4(c). *Id. See also Iowa Supreme Court Bd. of Prof'l Ethics and Conduct v. Remer,* 646 N.W.2d 91, 96 (Iowa 2002) (stating that the conduct of a conservator who entered into transactions with the conservatorship without court approval "reflects self-dealing, dishonesty, [and] total willingness to compromise the interests of his client").

Respondent further posits that his behavior was negligent, rather than intentional, because he did not know of the applicable District of Columbia Rule and Code governing conservatorships.[13] We have, however, never held that ignorance of a rule or statute is a defense. *See Attorney Grievance v. Thompson,* 376 Md. 500, 515, 830 A.2d 474, 483 (2003) ("Ignorance of the law is not a defense."). Therefore, Respondent's reliance on *Attorney Grievance v. DiCicco,* 369 Md. 662, 802 A.2d 1014 (2002) and *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 697 A.2d 446 (1997), is inapposite.

■ Respondent's conduct, moreover, is violative of Rules 8.4(a) and (d) which state:

---

**13.** Finding of fact number 4 states that:

By his own admission, the Respondent thought being appointed as a conservator entailed the same obligations that he had when he served as a trustee. He acknowledged that he had not familiarized himself with the applicable District of Columbia rules regarding this type of appointment.

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

* * *

(d) engage in conduct that is prejudicial to the administration of justice. . . .

This Court has found conduct constituting the misappropriation of client or third party funds to be "prejudicial to the administration of justice" in violation of Rule 8.4(d). *See Attorney Grievance v. Zuckerman,* 386 Md. 341, 374–75, 872 A.2d 693, 713 (2005); *Attorney Grievance v. Brown,* 380 Md. 661, 666–69, 846 A.2d 428, 431–32 (2004); *Attorney Grievance v. Somerville,* 379 Md. 586, 592, 842 A.2d 811, 814–15 (2004); *Attorney Grievance v. Gallagher,* 371 Md. 673, 713, 810 A.2d 996, 1020 (2002); *Attorney Grievance v. Santos,* 370 Md. 77, 83, 803 A.2d 505, 508–09 (2002); *Attorney Grievance v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002); *Attorney Grievance v. McCoy,* 369 Md. 226, 235, 798 A.2d 1132, 1137 (2002); *Snyder,* 368 Md. at 260, 793 A.2d at 525–26. We have recognized that public confidence in the legal profession is a critical facet to the proper administration of justice and conduct that negatively impacts on the public's image or the perception of the courts or the legal profession violates Rule 8.4(d). *Attorney Grievance v. Sheinbein,* 372 Md. 224, 252–53 & n. 16, 812 A.2d 981, 996–97 & n. 16 (2002); *Attorney Grievance v. Richardson,* 350 Md. 354, 368, 712 A.2d 525, 532 (1998). Respondent's self-dealing was harmful to the legal profession because his behavior undermines public confidence that an attorney will maintain entrusted funds as a fiduciary and as required by law. As such and consistent with this Court's well-established precedent, we hold that Respondent violated Rule 8.4(d) by engaging in behavior that was prejudicial to the administration of justice.

Respondent's violation of Rule 1.15, to which he failed to file an exception, as well as Rule 8.4(c) and (d) also

constitute a violation of Rule 8.4(a), which prohibits attorneys from violating or attempting to violate the Rules of Professional Conduct. *See Attorney Grievance v. Cherry–Mahoi,* 388 Md. 124, 159, 879 A.2d 58, 80 (2005) ("Because we have held that Respondent has violated several Rules of Professional Conduct, she necessarily violated Rule 8.4(a) as well, which finds professional misconduct where a lawyer 'violates or attempts to violate the Rules of Professional Conduct.' "). We therefore, conclude that Respondent violated Rules 1. 15, 8.4(a), (c), and (d), as well as Sections 10–306 and 10–307 of the Business Occupations and Professions Article, Maryland Code (1989, 2000 Repl.Vol.).

## *SANCTION*

In the case *sub judice,* we have concluded that Respondent violated Rules 1.15 and 8.4(a), (c), and (d), as well as Sections 10–306 and 10–307 of the Business Occupations and Professions Article, Maryland Code (1989, 2000 Repl.Vol.), when he withdrew $600,000 of conservatorship assets to purchase property that was titled in his name and that of his business partner. Petitioner recommends a sanction of disbarment. Respondent argues that a limited suspension is the appropriate sanction.

The appropriate sanction for a violation of the Rules of Professional Conduct generally "depends on the facts and circumstances of each case, including consideration of any mitigating factors," *Zuckerman,* 386 Md. at 375, 872 A.2d at 713, in furtherance of the purposes of attorney discipline: " 'to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession.' " *Id.,* quoting *Awuah,* 374 Md. at 526, 823 A.2d at 663. In *Attorney Grievance v. Sheridan,* 357 Md. 1, 741 A.2d 1143 (1999), we said:

Because "an attorney's character *must remain beyond reproach* " this Court has the duty, since attorneys are its officers, to insist upon the *maintenance* of the integrity of

the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public.

*Id.* at 27, 741 A.2d. at 1157, quoting *Attorney Grievance Comm'n v. Deutsch,* 294 Md. 353, 368–69, 450 A.2d 1265, 1273 (1982) (emphasis in original). When imposing sanctions, we have enunciated that, " '[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed.' " *Attorney Grievance v. Gore,* 380 Md. 455, 472, 845 A.2d 1204, 1213 (2004). As in every case, we consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances. *Attorney Grievance v. Sweitzer,* 395 Md. 586, 598–99, 911 A.2d 440, 447–48 (2006).

We have often iterated that "the misappropriation of entrusted funds 'is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment.' " *Nussbaum,* 401 Md. at 644, 934 A.2d at 19, quoting *Cherry–Mahoi,* 388 Md. at 161, 879 A.2d at 81. *Accord Attorney Grievance v. Prichard,* 386 Md. 238, 248, 872 A.2d 81, 86 (2005); *James,* 385 Md. at 666, 870 A.2d at 246; *Attorney Grievance v. Daskalopoulos,* 383 Md. 375, 384, 859 A.2d 653, 658 (2004); *Attorney Grievance v. Sperling,* 380 Md. 180, 191, 844 A.2d 397, 404 (2004); *Somerville,* 379 Md. at 593, 842 A.2d at 815; *Attorney Grievance v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002); *Vanderlinde,* 364 Md. at 406, 773 A.2d at 480. Disbarment also is warranted in the present case when the aggravating factors found in 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions (1991) are considered:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*See Mininsohn,* 380 Md. at 575, 846 A.2d at 376.

Aggravating factors (a), (h) and (i) are implicated in the present case because Respondent has a prior disciplinary offense, his victim was vulnerable, and he had substantial experience in the practice of law. *See id.* As the trial court found, Respondent's self-dealing involved the conservatorship funds of an adult disabled ward; a vulnerable victim. Respondent also had substantial experience in the practice of law having been admitted to the Bar of the Court of Appeals of Maryland on December 1, 1973, the Bar of the District of Columbia in 1991, and the Bar of the State of New York in 1997.[14]

██ Respondent has been sanctioned by this Court previously for failure to obtain the requisite court approval before paying himself legal fees, which we determined warranted an indefinite suspension with the right to reapply after eighteen months. *Attorney Grievance v. Whitehead,* 390 Md. 663, 683, 890 A.2d 751, 763 (2006). The prior disciplinary action also arose from Respondent's action as a conservator; the present violation was not addressed in that proceeding. When the violations and time period are substantially similar to those in a previous attorney grievance case, we generally mete out essentially the same discipline. *See Mba–Jonas,* 402 Md. at 346, 936 A.2d at 846. The present case is distinguishable from

---

14. We also note that during oral argument Respondent's attorney recognized that Respondent "had an expertise in special issues disabled people's trusts."

*Mba–Jonas,* because Whitehead's misappropriation of $600,000 to purchase an investment property in his name and that of his business partner occurred almost immediately after his appointment as conservator on September 16, 1999; on May 4, 2000 he took the funds without any court approval. The Respondent first took legal fees in the amount of $16,325 without court approval in July of 2001, according to the record. Clearly, the misappropriation of $600,000, the violation of greatest severity, occurred during the infancy of his conservatorship. Additionally, the misappropriation presently at issue involves violations of different norms and implicates a set of facts that had not been subjected previously to any investigation regarding rule violations.

We balance all of the forgoing considerations against mitigating factors, to include:

absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance v. Floyd,* 400 Md. 236, 258–59, 929 A.2d 61, 74 (2007); *Sweitzer,* 395 Md. at 599, 911 A.2d at 448, quoting *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996). *See also Attorney Grievance v. Rees,* 396 Md. 248, 255, 913 A.2d 68, 72 (2006) (concluding that thirty day suspension was the appropriate sanction after considering mitigating factors); *Attorney Grievance v. Briscoe,* 357 Md. 554, 568, 745 A.2d 1037, 1044 (2000) (stating that absent mitigating factors disbarment is the appropriation sanction); *DiCicco,* 369 Md. at 688, 802 A.2d at 1028 (considering "the absence of fraudulent intent and the lack of evidence that any client suffered financial loss resulting from the

Respondent's misconduct" when imposing sanctions). Respondent contends that he did not intend to misappropriate funds and, therefore, should not be disbarred, citing *Attorney Grievance v. Calhoun*, 391 Md. 532, 894 A.2d 518 (2006), *Attorney Grievance v. Culver*, 371 Md. 265, 808 A.2d 1251 (2002), and *Attorney Grievance v. Hayes*, 367 Md. 504, 789 A.2d 119 (2002). As we have discussed, however, Respondent's self-dealing constitutes an intentional misappropriation, despite his motivation. His reimbursement after inquiry by the Probate Court does not serve to mitigate his conduct.

Given the Respondent's intentional misappropriation of conservatorship funds from a vulnerable adult, after years of experience with the Bar, we are persuaded that " 'to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession' " disbarment is the appropriate sanction. *See Zuckerman*, 386 Md. at 375, 872 A.2d at 713, quoting *Awuah*, 374 Md. at 526, 823 A.2d at 663. We shall so order.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION.*

BELL, C.J., dissents.

Dissenting Opinion by BELL, C.J.

The Court of Appeals of the District of Columbia disbarred H. Allen Whitehead, the respondent, by consent, for having paid, when acting, as a "conservator," legal fees to himself for his services without prior court approval.[1] *Attorney Griev-*

---

1. D.C.Code § 21–2011 (2001) defines a "conservator" as "a person who is appointed by a court to manage the estate of a protected individual...."

*ance Comm'n v. Whitehead,* 390 Md. 663, 667, n. 6, 890 A.2d 751, 753–54, n. 6 (2006). Following the completion of recipro- cal discipline proceedings, subsequently initiated by the peti- tioner, the Attorney Grievance Commission, this Court reject- ed the disbarment sanction—expressly refusing to defer to the District of Columbia Court of Appeals—and imposed, instead, an indefinite suspension. *Attorney Grievance Comm'n v. Whitehead,* 390 Md. 663, 683, 890 A.2d 751, 763 (2006).

Although it may not have been the basis for the order of disbarment, the conduct at issue in this case was not unknown to this Court; in fact, the record of that case contained the respondent's admission that he had engaged in the conduct. Specifically, the Superior Court's Order removing the respon- dent as conservator for the Reginald Grayson, Jr. estate, stated:

> "The Court heard the representations and admissions from Michael Grady, made on behalf of the Conservator, H. Allen Whitehead. The Conservator, by and through his attorney, admitted on the record that he had violated D.C.Code § 21– 2060, D.C.Code 21–2068, SCR–PD 5(c) and SCR–PD 308. *Specifically, the Conservator admitted that he paid legal fees of $40,200.00 to himself without prior authorization and he entered into a self-dealing mortgage investment transaction, $600,000.00 of the adult ward's assets for the purchase of property located in New York City for himself and Aric Johnson*—such an investment by the Conservator represents a clear conflict of interest.
>
> Notwithstanding the Conservator's on the record admis- sions, Conservator seeks to tender his resignation to the Court, in lieu of removal from his post." (emphasis added). Further, in the attorney discipline case, Bar Counsel for the District of Columbia specifically averred that the respon- dent had misappropriated funds on two occasions, began an investigation on both counts, and sought consent from re- spondent on both bases."

*Id.* at 686, 890 A.2d at 765 (Bell, C. J., dissenting). Neverthe- less, the Court justified the lesser sanction by determining

that only the improper fee payment charge was at issue, refusing to consider the conduct at issue here, the self-dealing mortgage investment transaction and by concluding that the respondent had demonstrated extenuating circumstances under Rule 16–773(e)(4).[2]

I dissented, believing that in the absence of exceptional circumstances, the proper application of Rule 16–773, consistent with its purpose, "to ensure consistency of sanction and to demonstrate comity towards our sister jurisdictions[,]" *Whitehead*, 390 Md. at 690, 890 A.2d at 767, required this Court to defer to the sanction imposed by the disciplining court, especially as was the case there Maryland was not the respondent's primary place of practice, id. at 689–691, 890 A.2d at 767–68, and disbar the respondent on the basis that, and for the reason, that court did. That was not the only basis on which I relied to justify the sanction imposed by the District of Columbia Court of Appeals, however. Pointing out the consequences of the respondent's consent to disbarment, I explained:

---

**2.** I characterized the misconduct in the reciprocal discipline case as "misappropriation," whether referring to the improper fee payment or the self dealing mortgage transaction, as both involved misuse of client funds. Given the analysis employed by the majority in arriving at a sanction, I conclude that it treated the improper fee payment as a misappropriation as well. Explaining why a sanction other than disbarment was appropriate, it pointed out:

"In the case at bar, respondent did not take the fees before they were improperly accounted for or earned. Respondent practiced in Maryland for twenty-six years before moving to New York and petitioner did not provide any evidence that respondent was disciplined on any other occasion. From the record it is not apparent that respondent's conduct was intentional. Furthermore, he returned the unapproved fees upon learning that taking them without approval was inappropriate."

*Attorney Grievance Comm'n v. Whitehead*, 390 Md. 663, 676, 890 A.2d 751, 759 (2006). The majority seemed, in other words, to have determined that extenuating circumstances existed that mitigated the sanction. That also is consistent with Rule 16–773(d)(4):

"(e) Exceptional circumstances. Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that: ... (4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State...."

"Moreover, in this Court the respondent's status is not simply that of one who has consented to disbarment; rather, on the basis of that consent—from the admission it contained—he has been found by the hearing court to have violated Rule 8.4(a), (b), (c) and (d) [of the Maryland Rules of Professional Conduct]. Either subsection (b) or (c) constitutes a finding of intentional misappropriation of estate funds. That finding, in turn, is supported by the respondent's admission that he took fees from the estate, as to which he was conservator, without court permission. *In re Reginald Grayson, Jr.,* No. 195-94, Superior Court of the District of Columbia. In other cases, in which the hearing court has found a violation of Rule 8.4(b) or (c), where there has been an inappropriate handling of monies or in which a trust account has been out of balance, we have refused to allow a respondent to be heard to say, and certainly not to succeed in the argument, that there was no misappropriation found or that it was not intentional. *Attorney Grievance Comm'n v. Cafferty,* 376 Md. 700, 723, 831 A.2d 1042, 1056-7 (2003); *Attorney Grievance Comm'n v. Sabghir,* 350 Md. 67, 68, 710 A.2d 926, 926 (1998); *Attorney Grievance Comm'n v. Gittens,* 346 Md. 316, 325, 697 A.2d 83, 88 (1997); *Attorney Grievance Comm'n v. Willcher,* 340 Md. 217, 221-222, 665 A.2d 1059, 1061 (1995); *Attorney Grievance Comm'n v. Sparrow,* 314 Md. 421, 425, 550 A.2d 1150, 1152 (1988).

"There is, consequently, another basis for imposing the sanction the District of Columbia court imposed. That basis, moreover, is consistent with the majority's desire and apparent determination, to attain, and to maintain, internal consistency in attorney discipline cases. As we have so often stated, disbarment is the inexorable result of a finding of misappropriation, absent compelling extenuating circumstances. *Attorney Grievance Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Grievance Comm'n v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491-92 (2002); *Attorney Grievance Comm'n v. Sullivan,* 369 Md. 650, 655-56, 801 A.2d 1077, 1080 (2002); *Attorney Grievance*

*Comm'n v. Vanderlinde,* 364 Md. 376, 410, 773 A.2d 463, 483 (2001). That the respondent did not appreciate, or was not told, that disbarment need not be the sanction for the premature taking of a fee is neither a compelling nor extenuating circumstance."

Id. at 688–89, 890 A.2d at 766 (footnote omitted).

Therefore, it is not the sanction that was has been imposed in this case that causes me to dissent. This is the sanction that I have believed to be the correct one since this case first was presented to this Court in the posture of a reciprocal discipline case; finally, I would say ordinarily, the Court got it right, albeit belatedly. No, I write separately, in dissent, to express my disagreement with a trend that more and more, recently, has become evident and threatens to swallow our misappropriation jurisprudence.

It is well settled in this State that "disbarment will inevitably follow any unmitigated misappropriation of client, or any third party's funds." *See e.g. Attorney Grievance Comm'n v. Hayes,* 367 Md. 504, 512–513, 789 A.2d 119, 124–125 (2002); *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001); *Attorney Grievance Comm'n v. Bernstein,* 363 Md. 208, 226, 768 A.2d 607, 617 (2001); *Attorney Grievance Comm'n v. Tomaino,* 362 Md. 483, 498, 765 A.2d 653, 661 (2001); *Attorney Grievance Comm'n v. Williams,* 335 Md. 458, 474, 644 A.2d 490, 497 (1994); *Attorney Grievance Comm'n v. White,* 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Grievance Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 345, 587 A.2d 511, 516 (1991); *Attorney Grievance Comm'n v. Kolodner,* 321 Md. 545 546–47, 583 A.2d 724, 725 (1991); *Attorney Grievance Comm'n v. Ezrin,* 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988); *Attorney Grievance Comm'n v. Bloom,* 306 Md. 609, 611, 510 A.2d 589, 590 (1986); *Attorney Grievance Comm'n v. Cockrell,* 304 Md. 379, 393–94, 499 A.2d 928, 935 (1985); *Attorney Grievance Comm'n v. Boehm,* 293 Md. 476, 481, 446 A.2d 52, 54 (1982); *Attorney Grievance Comm'n v. Burka,* 292 Md. 221, 225, 438 A.2d 514, 517 (1981); *Attorney Grievance*

*Comm'n v. Micka,* 289 Md. 131, 133, 422 A.2d 383, 384 (1980); *Attorney Grievance Comm'n v. Garson,* 287 Md. 502, 503, 413 A.2d 564, 564 (1980); *Attorney Grievance Comm'n v. McBurney,* 283 Md. 628, 631, 392 A.2d 81, 82–83 (1978); *Attorney Grievance Comm'n v. Andresen,* 281 Md. 152, 160, 379 A.2d 159, 163 (1977); *Attorney Grievance Comm'n v. Silk,* 279 Md. 345, 347, 369 A.2d 70, 71 (1977); *Bar Ass'n of Baltimore City v. Carruth,* 271 Md. 720, 728, 319 A.2d 532, 536 (1974); *Bar Ass'n of Baltimore City v. Marshall,* 269 Md. 510, 519, 307 A.2d 677, 682 (1973). Misappropriation, however, is not a strict liability offense. That this is so is reflected in the emphasis this Court has placed on the requirement that the misappropriation be "intentional." *See e.g., Attorney Grievance Comm'n of Maryland v. Webster,* 402 Md. 448, 473, 937 A.2d 161, 175 (2007) ("We have stated that intentional misappropriation of funds entrusted to an attorney's care is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment.") and cases therein cited; *Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485 (identifying "the intentional misappropriation of funds" as among the conduct for which only circumstances that are "utterly compelling" will be considered for mitigation). Moreover, the absence of a dishonest or selfish motive is a factor that this Court has determined to be a mitigating factor, entitled to some weight with regard to sanction. *Attorney Grievance Comm'n v. Thompson,* 367 Md. 315, 330, 786 A.2d 763, 772–73 (2001); *Attorney Grievance Comm'n v. Jaseb,* 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996). *See also Attorney Grievance Comm'n v. Nussbaum,* 401 Md. 612, 645–46, 934 A.2d 1, 20–21 (2007), cataloging the misappropriation cases in which there was a finding of the misuse of client funds, but did not result in disbarment, *Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 922 A.2d 554 (2007); *Attorney Grievance Comm'n v. Rees,* 396 Md. 248, 913 A.2d 68 (2006); *Attorney Grievance Comm'n v. Calhoun,* 391 Md. 532, 894 A.2d 518 (2006); *Attorney Grievance Comm'n v. Whitehead,*

390 Md. 663, 890 A.2d 751 (2006); *Attorney Grievance Comm'n v. Maignan,* 390 Md. 287, 888 A.2d 344 (2005); *Attorney Grievance Comm'n v. Zuckerman,* 386 Md. 341, 872 A.2d 693 (2005); *Attorney Grievance Comm'n v. Rose,* 383 Md. 385, 859 A.2d 659 (2004); *Attorney Grievance Comm'n v. DiCicco,* 369 Md. 662, 802 A.2d 1014 (2002); *Attorney Grievance Comm'n v. Hayes,* 367 Md. 504, 789 A.2d 119 (2002), and explaining their rationale:

"In every case cited, except *Calhoun,*[3] however, the hearing judge did not find a violation of MRPC 8.4(c). *Goff,* 399 Md. at 16, 922 A.2d at 563 (hearing court declined to find violation of MRPC 8.4(c)); Rees, 396 Md. at 251 n. 7, 913 A.2d at 69 n. 7 (hearing court found allegation that Rees violated MRPC 8.4(c) to be "frivolous"); *Whitehead,* 390 Md. at 669, 890 A.2d at 755 (reciprocal discipline case in which District of Columbia Court of Appeals did not specifically find violation of the equivalent of MRPC 8.4(c)); *Maignan,* 390 Md. at 292, 888 A.2d at 347 (hearing court declined to find violation of MRPC 8.4(c)); *Zuckerman,* 386 Md. at 360, 872 A.2d at 704–05 (attorney was not charged with a violation of 8.4(c)); *Rose,* 383 Md. at 391, 859 A.2d at 662 (same); *DiCicco,* 369 Md. at 666, 684, 802 A.2d at 1016, 1026 (hearing court declined to find violation of MRPC 8.4(c); Bar Counsel excepted to the finding and this Court overruled the exception, holding that the evidence showed the respondent to be negligent, not "willful or deceitful"); *Hayes,* 367 Md. at 511, 789 A.2d at 123–24 (respondent was not charged with a violation of MRPC 8.4(c).)"

In the case *sub judice,* the hearing court concluded that the respondent misappropriated funds of the estate as to which he was conservator, by violating Rules 1. 15,[4] 8.4(a), (c) and (d),[5]

---

**3.** How we distinguished *Attorney Grievance Comm'n v. Calhoun,* 391 Md. 532, 894 A.2d 518 (2006), is instructive and relevant to this case, as we shall see *infra.*

**4.** Maryland Rule 1. 15 provides, in pertinent part:
 "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate

and Sections 10–306[6] and 10–307[7] of the Business Occupations and Professions Article, Maryland Code (1989, 2000 Repl.Vol.). The conclusions were based on pertinent factual findings, as follows: with regard to Rule 1.15, that the respondent violated MRPC 1.15 by utilizing estate property for his own benefit; however, somewhat consistently with the respondent's argument, the court indicated its belief in the respondent's sincerity in wanting to maximize the assets of the estate, but decried the manner in which he chose to do so; as to Rule 8.4, "that the Respondent clearly knew what he was doing when he utilized estate funds to purchase real property that he would personally own and that he exhibited poor judgment in doing so. Although his actions may not have been a deliberate attempt to deceive, the net effect of his actions is that he engaged in self-dealing[;]" as to § 10–306,

----

from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

5. Rule 8.4, Misconduct, of the Maryland Rules of Professional Conduct, provides, as relevant:
"It is professional misconduct for a lawyer to:
"(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
\* \* \* \*
"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
"(d) engage in conduct that is prejudicial to the administration of justice."

6. Section 10–306 proscribes a lawyer's "use [of] trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

7. Section 10–307 provides:
"A lawyer who willfully violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10–303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide."

"that [the respondent] had not bothered to read the District of Columbia Code or rules governing conservatorships. Had he taken the time to do so, he would have more than likely known that prior court approval was needed regarding investing estate assets in real estate venture in which he was a principal.

"The court does not find that the Respondent harbored a nefarious intent to deprive the estate of its assets. The court does find, however, that the Respondent's actions resulted in monies entrusted to him being utilized for unauthorized investments."

Although the misappropriation will have been established with the sustaining of any one of the charged Rule violations or of § 10–306, only Rule 8–4(c) involves proof of an intent that would require disbarment as the default position, that would require the respondent to establish compelling extenuating circumstances to avoid that disposition. Accordingly, the respondent excepted to the conclusion that the petitioner had proven that Rule violation and that Rule violation only. It is significant, I think, that the hearing court did not specifically address each paragraph of the Rule alleged to have been violated, stating simply what the petitioner alleged and concluding that the respondent "violated MPRC 8.4." Rather than state clearly and unequivocally that the respondent engaged in conduct that was dishonest, fraudulent or deceitful, it characterized his actions in using estate funds without permission as "using poor judgment" and acknowledged that "his actions may not have been a deliberate attempt to deceive," although their "net effect" was "self-dealing." I have a hard time finding support for an 8.4(c) violation from this finding; it is hardly a ringing indictment for "intentional misappropriation."

The findings underlying the other Rule and statutory charges do not help or strengthen the petitioner's case or the hearing court's conclusion. As we have seen, while finding a violation of Rule 1.15 and decrying the manner in which he chose to do so, the hearing court the court indicated that it believed in the respondent's sincerity in wanting to maximize

the assets of the estate. With regard to § 10–306, not only does the hearing court acknowledge the petitioner's negligence in failing to become conversant with the rules regarding District of Columbia Conservatorships, negating intentional conduct, but it expressly "does not find that the Respondent harbored a nefarious intent to deprive the estate of its assets." The further finding that the respondent's actions resulted in monies entrusted to him being utilized for unauthorized investments simply does not conflict with, or override, the earlier ones.

My problem is that, under the majority's analysis, intent is not an element to be considered when the charge is misappropriation and that the motive underlying the conduct, although relevant, need not seriously be considered, even on the question of the appropriate sanction.[8] This is not the first time I have addressed the latter point. In *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 876 A.2d 642 (2005), in which the hearing court found that the respondent "intend[ed] the natural consequences of her action and nonaction," but concluded that, by those actions and nonactions, the respondent had no intent to harm her client, I dissented, reasoning that, given the court's conclusions, a finding that Rule 8.4(c) had been violated did not, as a matter of law, mean that the respondent acted with a dishonest or selfish motive. Id. at 602, 876 A.2d at 664. On the contrary, I concluded that the opposite was true, that the respondent acted without a dishonest or selfish motive. That the hearing court could have reached the opposite conclusion and, more to the point, that the opposite conclusion is the one that a reviewing court may prefer and, as factfinder, would have reached, can, and should, not change that reality. Id.

---

**8.** I must confess that I also have a hard time squaring the use of the reciprocal discipline case as a prior disciplinary proceeding. As the opinion in that case made clear, the mortgage investment matter was fully revealed, even admitted by the respondent in that case. Indeed, as I point out *supra* and at *Whitehead,* 390 Md. at 688–89, 890 A.2d at 766, so well developed was the issue that it could have been used in the reciprocal discipline case as another basis for deferring to the sanction of the District of Columbia Court of Appeals.

As I have demonstrated, our cases require consideration of intent both in determining whether misappropriation has occurred and on the sanction and of motive on the issue of sanction.

Moreover, the majority's analysis is inconsistent with this Court's analysis of this very issue in prior cases. Indeed, to make the point, we need go no further than the reciprocal discipline case involving this very respondent, *Whitehead*, 390 Md. 663, 890 A.2d 751. In that case, in justifying a sanction different from, and more lenient than, that imposed by the District of Columbia Court of Appeals, we clearly relied on the lack of the proof of intent to misappropriate the premature fee payment, stating "[f]rom the record it is not apparent that respondent's conduct was intentional." Id. at 676, 890 A.2d at 759.[9]

*Calhoun* is also instructive and relevant on this point. As promised, *see* note 3, its significance lies in the way in which this Court distinguished it in *Nussbaum*, 401 Md. 612, 934 A.2d 1. There, Judge Battaglia, writing for a unanimous Court, explained:

"In the singular case in which a violation of 8.4(c) was found and disbarment was not ordered, *Calhoun*, 391 Md. at 532, 894 A.2d at 518, the respondent was charged with violating multiple rules of professional conduct, including 8.4(c), in connection with her representation of a client in a sexual harassment suit. The hearing court found that Calhoun had commingled trust funds and personal funds by failing to deposit two $5,000.00 payments for fees and an $8,000.00 settlement check into a properly designated attorney trust account. The hearing judge found that Calhoun had misled her client concerning legal fees and costs owed by failing to keep him informed of the accrual of those fees and costs in a

---

**9.** It may also be worth mentioning that, when the Court was trying to justify a different, more lenient sanction than the sanctioning court, it was willing even to consider that the respondent "returned the unapproved fees upon learning that taking them without approval was inappropriate." *Whitehead*, 390 Md. at 676, 890 A.2d at 759 (2006). Dare I say it?—so much for internal consistency!

timely fashion, as was required by her representation agreement. Specifically, the court found that she 'mis[led] by silence and lack of communication,' *id.* at 548, 894 A.2d at 527, and that she violated 8.4(c) by her 'failure to communicate properly.' Id. at 552, 894 A.2d at 530. In determining Calhoun's sanction, this Court noted that 'while the hearing judge did find that respondent violated MRPC 8.4(c), he did not find specifically that respondent engaged in dishonest or fraudulent conduct,' id. at 571, 894 A.2d at 541, and focused on the respondent's treatment of the $8,000.00 in settlement funds. We noted that the hearing court did not find that Calhoun had intentionally misappropriated the settlement funds, but rather that the facts indicated that she may have believed, albeit erroneously, that the settlement funds were owed to her to cover fees and costs associated with representation. Id. at 574, 894 A.2d at 543."

Id. at 646–47, 934 A.2d at 21.

I dissent. As I said in *Pennington,* 387 Md. at 602, 876 A.2d at 664:

"There really is no good reason, and the public is not protected, when an attorney, acting, as found by the hearing court, without a selfish or dishonest motive is disbarred. Imposition of such a sanction under those circumstances, amounts to nothing more than punishment."