*Attorney Grievance Commission of Maryland v. Mary Theresa Keating*, Misc. Docket AG No. 46, September Term 2019. Opinion by Hotten, J.

**ATTORNEY DISCIPLINE – SANCTIONS – INDEFINITE SUSPENSION** – The Court of Appeals indefinitely suspended Mary Theresa Keating ("Respondent") from the practice of law in Maryland with a right to reapply in six months. This Court found that Respondent violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 19-303.3 (Candor Toward the Tribunal) and 19-308.4 (Misconduct) through the submission of a knowingly falsely attested will to the Register of Wills. Respondent fraudulently submitted the will to further her client's final testamentary wishes, not for personal enrichment. Respondent received life insurance proceeds from her client, but these proceeds passed outside of the probate. Respondent safeguarded these assets in a trust account and spent the balance in furtherance of her client's final testamentary wishes. Respondent had no legal obligation to allocate these funds towards her client's estate. These good faith efforts, combined with a distinguished career, an absence of prior discipline, and a showing of high moral character, reduced the severity of discipline from disbarment to indefinite suspension with a right to reapply in six months.

Circuit Court for Baltimore City
Case No. 24-C-19-005443
Argued: October 2, 2020

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 46

September Term, 2019

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

MARY THERESA KEATING
_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Hotten, J.
Watts, J., concurs.

_____

Filed: December 23, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

The Attorney Grievance Commission of Maryland, acting through Bar Counsel ("Petitioner"), directed that charges be filed against Mary Theresa Keating ("Respondent"), pursuant to Md. Rule 19-721.[1] The charges followed an investigation of Respondent's letter to Petitioner dated August 2, 2018, where Respondent admitted that she falsely witnessed the last of three wills of her now-deceased client, Keith Wilson.

On October 21, 2019, Petitioner filed a Petition for Disciplinary or Remedial Action against Respondent. On October 23, 2019, pursuant to Md. Rule 19-722(a),[2] we assigned the matter to the Honorable Gregory Sampson ("hearing judge") of the Circuit Court for Baltimore City to conduct a hearing and render findings of fact and conclusions of law. The circuit court conducted a hearing on January 28, 2020. Upon consideration of the evidence presented, the hearing judge found, by clear and convincing evidence, that Respondent violated Maryland Attorneys' Rules of Professional Conduct ("MARPC")[3] 19-301.8 (Conflict of Interest), 19-303.3 (Candor Toward the Tribunal), 19-308.4

[1] Maryland Rule 19-721(a)(1) provides, in pertinent part: "Upon approval or direction of the Commission, Bar Counsel, on behalf of the Commission, shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

[2] Maryland Rule 19-722(a) provides, in pertinent part: "Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating (1) a judge of any circuit court to hear the action, and (2) the clerk responsible for maintaining the record."

[3] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and re-codified in Title 19 of the Maryland Rules, without substantive change. Respondent's misconduct occurred between January 2016 and March 2018. We use MARPC throughout this opinion to maintain clarity.

(Misconduct), and 19-408 (Commingling of Funds). Both Petitioner and Respondent filed Exceptions to the hearing judge's findings of fact and conclusions of law.

We republish the pertinent portions of those findings of fact and conclusions of law below.

## FINDINGS OF FACT

The hearing judge rendered the following findings of fact regarding Respondent's representation of Mr. Wilson:

> Respondent was admitted to the Maryland Bar on June 26, 1985. At all times relevant hereto, Respondent maintained an office for the practice of law in Baltimore City. Each of Petitioner's allegations against the Respondent arise from the common nexus of Respondent's representation of [Mr. Wilson].
>
> **[] Representation of Mr. Wilson Prior to 2013.**
>
> Beginning in 2001, Respondent developed a long-standing attorney-client relationship with Mr. Wilson. In 2001, the Respondent represented Mr. Wilson in a matter before the Equal Employment Opportunit[y] Commission. After that initial representation, the Respondent regularly represented Mr. Wilson as he began to acquire properties in Baltimore City (in matters primarily related to landlord/tenant issues as well as matters involving the Maryland Department of [the] Environment). Relevant to this proceeding, Respondent represented Mr. Wilson in estate matters, testifying that she often changed Mr. Wilson's will, upon his request, to reflect the changing relationships in Mr. Wilson's life.
>
> The Respondent drafted several wills for Mr. Wilson, beginning in 2003. Per the evidence and testimony in this matter, the Respondent drafted as least six wills for Mr. Wilson from January 2003 until February 2018.[4]
>
> The 2003 will designated a Joan Malarkey as personal representative and a Marvin Walker as the personal representative should Joan Malarkey become unwilling or unable to serve. The 2003 will describes Joan Malarkey and Marvin Walker as friends of Mr. Wilson. In pertinent part, the 2003 will

---

[4] Respondent testified that she "seldom even charged [Mr. Wilson] for his legal work over the years."

2

directs that Mr. Wilson's personal effects, automobiles, and other tangible personal property as well as the residuary estate be given, in equal parts, to Joan Malarkey, Marvin Walker and a Robert [M]asingo, who is identified as Mr. Wilson's cousin (hereinafter "Mr. [M]asingo").

## [] The 2013 will[.]

The 2013 will, drafted for Mr. Wilson by the Respondent, designated Mr. [M]asingo as personal representative of the estate and a Rodney Nasingo[5] as the personal representative should Mr. [M]asingo become unwilling or unable to serve. In pertinent part, the 2013 will directs that Mr. Wilson's personal effects, automobiles and other tangible personal property, as well as the residuary of his estate, be given in equal shares to Rodney Nasingo and Mr. [M]asingo.

## [] The 2015 will.

The 2015 will designated, for the first time, the Respondent as personal representative of Mr. Wilson's estate. A Cailin Smith, later identified as the daughter of the Respondent, was named as the personal representative should the Respondent become unwilling or unable to serve. The Respondent testified that Mr. Wilson knew her daughter, and that he suggested her as an alternate personal representative. In pertinent part, the 2015 will directs that "personal and household effects, vehicles and other tangible personal property" be given to a Corey Blanton, identified as a friend of Mr. Wilson. Corey Blanton was also to be given a building owned by Mr. Wilson.

The 2015 will further designated that a trailer and its contents, and the land where the trailer was situated, would be given to Mr. [M]asingo. Mr. [M]asingo was also to receive boats, a gun collection and the proceeds of a life insurance policy. Lastly, pursuant to this will, a Gary Feliciano, an acquaintance and occasional roommate of Mr. Wilson, was to receive a $10,000 cash gift from the estate, if the funds were available. The residuary of the estate was to be given to "the New Southwest Baptist Church."

## [] The 2016 will and the Respondent's representation regarding the 2016 will.

The 2016 will, drafted for Mr. Wilson by the Respondent, designated the Respondent as the personal representative of Mr. Wilson's estate. Mr. David Allen, Esq. (hereinafter "Mr. Allen") was designated as the personal representative should the Respondent become unwilling or unable to serve.

---

[5] The record is unclear whether the surname should be spelled Masingo.

3

In pertinent part, the will directs that "personal and household effects, vehicles, boats, tools and other tangible personal property" be divided equally between Corey Blanton and Gary Feliciano. Corey Blanton was also to receive a building owned by Mr. Wilson. Further, Gary Feliciano was to receive a $10,000 cash gift from the estate (so long as the funds were available), as well as Mr. Wilson's dog, if the personal representative was satisfied that Mr. Feliciano was not using any drugs. The 2016 will further directs the personal representative to sell a trailer and its contents, as well as the land it was situated upon, and a condominium with the proceeds to be added to the estate. The residuary of the estate was to be given to the New Southwest Baptist Church.

Regarding Mr. [M]asingo, the will states as follows: "I will give the guns that my cousin Robert [M]asingo took, along with the ammunition, and the remaining pieces of my gun collection to Robert [M]asingo, if he survives me." The Respondent testified during trial that she believed Mr. Wilson's relationship with Mr. [M]asingo deteriorated after some firearms went missing while in his care.

The 2016 will memorializes the first appearance of Mr. Wilson's appointment of the Respondent as a beneficiary of a life insurance policy in his name. The Respondent testified during trial that she believes Mr. Wilson took out the policy in or around April of 2015, but she first became aware of it when working with Mr. Wilson to draft the 2016 will. Regarding the Respondent, the 2016 will states: "[Mr. Wilson has] a $100,000 life insurance policy with [Respondent] as [Mr. Wilson's] beneficiary. [Mr. Wilson] direct[s] her to use the proceeds to pay for [Mr. Wilson's] funeral, pay all the expenses of the administration, and to retain the remainder, along with anything still in [Respondent's] safe that [Mr. Wilson] entrusted to [Respondent] for safekeeping."

The Respondent testified that the portion of the will directing the use of life insurance policy funds was constructed at the insistence of Mr. Wilson, and that the policy was purchased by Mr. Wilson without the knowledge of the Respondent. The Respondent further testified that Mr. Wilson was a very persistent and headstrong individual and insisted upon the resulting construction despite Respondent's advice to the contrary.[] Nevertheless, the Respondent testified that she did cede to Mr. Wilson's wishes, due in large part to his insistence. Respondent's testimony evidenced that she was aware there may be some level of impropriety in preparing a will that would deliver to her a benefit. However, per her testimony, the Respondent took such action anyway.

4

## [] The 2017 will.

The 2017 will designated the Respondent as personal representative and Mr. Allen as the personal representative should the Respondent be unwilling or unable to serve.

In pertinent part, the 2017 will directed that Gary Feliciano and Corey Blanton were each to receive one of the vehicles owned by Mr. Wilson. Corey Blanton was also to be given a building owned by Mr. Wilson. Mr. Feliciano was to receive Mr. Wilson's dog and a cash gift of $5,000. Regarding a Douglas Haynes, identified as a business partner with Mr. Wilson, the 2017 will states: "[Mr. Wilson] give[s] half of the limited liability company Willshay Properties, plus the sum of $10,000, to [Mr. Wilson's] co-owner, Douglas Haynes, if he survives [Mr. Wilson]."

Regarding the Respondent, the 2017 will stated: "[Mr. Wilson has] a life insurance policy with [Respondent] as [the] beneficiary. [Mr. Wilson directs] her to use the proceeds to pay for [Mr. Wilson's] funeral, pay all expenses of the administration, pay off the balances of [Mr. Wilson's] mortgages, and to pay the gifts to Gary Feliciano and Douglas Haynes. [The Respondent] may retain the remainder, if any, along with anything still in her safe that [Mr. Wilson] entrusted to her for safe keeping."

As in the 2016 will, the personal representative was directed to sell a trailer, its contents and the land upon which it was situated, as well as a condominium, with the proceeds of all transactions added to the estate. The residuary of the estate under the 2017 will was to go to the New Southwest Baptist Church. The Respondent, and a "Kirby M. Smith," later identified via Respondent's testimony as Respondent's son, witnesse[d] the 2017 will.

## [] The 2018 will.

The 2018 will once again designated the Respondent as personal representative, and Mr. Allen as the personal representative should the Respondent become unwilling or unable to serve. The Respondent testified that the 2018 will was prepared in early February 2018 in accordance with the instructions given to the Respondent by Mr. Wilson. The [R]espondent further testified that she forwarded the revised will to Mr. Wilson for his review on or before February 14, 2018 and directed Mr. Wilson to sign the will in the presence of two witnesses, having those witnesses also sign the will.

5

In pertinent part, the 2018 will directed that Gary Feliciano receive "trucks and cars, boats, and my building supplies and tools, as well as my furnishings and other personal property." Gary Feliciano was to receive a cash gift of $10,000 from the estate as well as Mr. Wilson's dog. The stipulation that Mr. Feliciano was to remain drug free, included in the 2017 will, was removed from the 2018 will. Two buildings owned by Mr. Wilson were to be given to the New Southwest Baptist Church.

The items given to Douglas [Haynes] pursuant to the 2017 will (half of the limited liability company, as well as a cash gift of $10,000) remained unchanged in the 2018 will. Additionally, the language regarding the life insurance policy with the Respondent as beneficiary remained unchanged in the 2018 will.

The 2018 will further designated that a trailer, its contents, and the land upon which the trailer was situated, as well as a condominium, were to be given to [] Douglas Haynes. No provision for Corey Blanton was made in the 2018 will. Under the 2018 will, the [] residuary estate was to be given to Gary Feliciano with the contingency that if Mr. Feliciano failed to survive Mr. Wilson, that the residuary estate be given to The New Southwest Baptist Church.

### [] Representation following Mr. Wilson's death.

Per the evidence and testimony in this matter, Mr. Wilson died on February 16, 2018. The Respondent testified that she received news of Mr. Wilson's death while she was out of the state.

Upon the Respondent's return to Baltimore, she testified that she went to the home of Mr. Wilson. Mr. Feliciano, who resided in the same home as Mr. Wilson at the time, turned over paperwork of Mr. Wilson that included the 2018 will that the Respondent had forwarded to Mr. Wilson a few days prior to his death.

Per the Respondent's recollection, she inspected the will and discovered that, while Mr. Wilson had signed the will, it was only witnessed by one person (a Michael Shilling).[6] The Respondent testified that, at this time, she signed her name as the second witness to the will.

---

[6] Maryland law requires at least two or more witnesses to attest and sign the will in the presence of the testator. Maryland Code Ann., Estates and Trusts ("Est. & Trusts") § 4-102; *see also Stuart v. Foutz*, 185 Md. 401, 403, 45 A.2d 98, 99 (1945) (describing the signature of just one witness as "an obviously fatal defect[.]").

6

In March of 2018, the Respondent submitted the 2018 will, with her signature affixed as a witness, for probate to the Register of Wills. The Respondent admitted that she knowingly and falsely stated in her filing that she had been a witness to the signing of the will. Respondent was aware that the submission of the will for probate was under the penalty of perjury. The Respondent testified that she signed and submitted the 2018 will for probate in order to fulfill the last wishes of the decedent, Mr. Wilson.

The Respondent testified that she took the following actions as personal representative of the estate pursuant to the 2018 will:

- Took the jewelry in her safe and had it appraised for the purpose of the estate (the jewelry was subsequently listed on the inventory for the estate).
- Deposited the life insurance policy proceeds in her client escrow account[7] because the proceeds were to go, in part, to other matters as stated in the 2018 will.
- Went to Florida and received an appraisal for Mr. Wilson's properties located in Florida.
- Repaid the estate account for the costs of the funeral.

The Respondent testified that she believed, at the time of Mr. Wilson's death, that there were a number of outstanding mortgages upon Mr. Wilson's properties that would need to be settled via the estate. However, the Respondent testified that she learned (following Mr. Wilson's death) that the liens for the relevant mortgages were released in January of 2018.

On July 18, 2018, Mr. Masingo filed, through the assistance of counsel, a Petition to Caveat Will Dated February 24, 2018 (hereinafter "Petition to Caveat"). The Respondent subsequently retained counsel, and through such counsel responded to the Petition to Caveat with an admission that the 2018 will was not properly witnessed. The Respondent wrote a letter to Bar Counsel self-reporting her conduct on August 2, 2018.

### [] Testimony of Mr. David Allen.

David Allen is an attorney who was also employed by the decedent, Mr. Wilson, representing Mr. Wilson until Mr. Wilson's death. Mr. Allen

---

[7] The hearing judge uses the term escrow account and attorney trust account interchangeably. Both terms refer to the same general obligation of an attorney to safeguard client funds by depositing them into an attorney trust account at an approved financial institution. Maryland Rule 19-404.

testified that he assisted Mr. Wilson with the transfer of the (sic) Mr. Wilson's personal property into two LLCs. Robert [M]asingo, a cousin, was designated as a member of the LLC, along with Mr. Wilson. Mr. Allen stated that he discovered at Mr. Wilson's funeral that Mr. [M]asingo and Mr. Wilson had a falling out over handguns that had been owned by Mr. Wilson.

Mr. Allen further testified that he was not aware that he had been named as the alternate Personal Representative until the [Petition to Caveat] the will had been filed. Per Mr. Wilson,[8] after the caveat was filed, the Respondent was concerned that she would be removed as the Personal Representative, so the Respondent resigned. Mr. Allen was later informed of the circumstances of the 2018 will. After the hearing in the Orphan's Court Mr. Allen was informed by the Respondent's attorney that he (Mr. Allen) would have to take over as the Personal Representative.

Upon accepting his appointment as the Personal Representative, Mr. Allen made three visits to the Respondent's office and was given three file boxes. On another visit to the Respondent's office, Mr. Allen was given a bag of jewelry. Also, the Respondent transferred an estate account containing over $160,000 to Mr. Allen.

The Respondent and Mr. Allen discussed the insurance policy. Money would be requested from the Respondent in reference to the expenses to be paid from the insurance policy as stated in the decedent's wills. Mr. Allen requested and the Respondent delivered a check for $15,000 for the distributions to Mr. Haynes and Mr. Feliciano per the instructions in the 2017 will.

An accounting of the estate was completed by Mr. Allen and accepted by the Orphan's Court. Included in the estate was four pieces of real estate and some property in Florida. Mr. Allen also testified that there were some outstanding tax issues. According to Mr. Allen, expenses will incur regarding the estate and Mr. Allen will continue to send invoices to the Respondent for these expenses that Mr. Allen would expect to be paid from the insurance policy proceeds. The Respondent has called and emailed Mr. Allen several times asking if there were additional expenses to be paid.

Mr. Allen described the decedent's business as real estate and contracting services. Mr. Wilson would rehabilitate houses both for himself and others. Mr. Wilson would employ a "crew" of individuals, including Mr. Haynes

---

[8] The hearing judge likely intended Mr. Wilson to read Mr. Allen.

8

and Mr. Feliciano, who lived either in the home of Mr. Wilson or in houses owned by Mr. Wilson.

Mr. Allen described Mr. Wilson as someone who "thought he knew better" and would often not follow his advice.

Mr. Allen testified that he spoke very infrequently to the Respondent prior to the caveat to the will.

## [] Further testimony of the Respondent.

The Respondent testified in the hearing as follows: The Respondent received a Bachelor of Arts from the University of Michigan. She received her law degree from the Berkeley Law School, graduating in 1983. She subsequently worked for the FTC and began working at Weinberg and Green in banking and litigation in 1985. After ten years at Weinberg and Green, she left to open her own practice on Calvert Street in Baltimore City. In her own practice, the Respondent had a few commercial clients and wanted to expand her employment law practice. She also was involved in the areas of real estate litigation as well as some bankruptcy and wills and estate.

Mr. Wilson became the client of the Respondent in 2001 as a result of an EEOC complaint. That case was settled with installment payments being made to Mr. Wilson. Mr. Wilson then began to acquire properties in Southwest Baltimore. Mr. Wilson met Mr. Feliciano when they became neighbors. Mr. Feliciano and Mr. Haynes became part of Mr. Wilson's "entourage" who would assist Mr. Wilson in his business activities. The Respondent continued to represent Mr. Wilson in rent and Maryland Department of [the] Environment matters.

From conversations with Mr. Wilson, the Respondent believed that Mr. Wilson's relationship with Robert [M]asingo, his cousin, deteriorated after some firearms went missing while in the care of Mr. [M]asingo. The 2016 [will] stated that "I give the guns that my cousin Robert [M]asingo took along with the ammunition, and the remaining pieces in my gun collection to Robert [M]asigno, if he survives me."

The Respondent testified that Mr. Wilson took out the insurance policy that named the Respondent as the beneficiary in April of 2015. She did not know about the policy at the time. She remembered that she may have been first made aware of the policy when she and Mr. Wilson began to discuss the 2016 will. Per the Respondent, she did not solicit Mr. Wilson to make her the recipient of the life insurance policy or the jewelry. The Respondent stated

that she spoke to Mr. Wilson about the estate being the beneficiary, but Mr. Wilson believed that the Respondent personally would carry out his wishes. Although subsequent wills differed as to amounts to be given to different individuals and for what purposes, the general language of the will making the Respondent the beneficiary remained the same.

The Respondent further testified that she changed his will often to reflect the changing relationships of Mr. Wilson.

In reference to the 2018 will, the Respondent testified that as with other wills, Mr. Wilson would ask for updates. The update for the 2018 will increased the gift to Mr. Feliciano from $5,000 to $10,000.

The Respondent testified that the 2018 will was prepared in early February 2018 in accordance with the instructions given to the Respondent by Mr. Wilson. The [R]espondent further testified that she forwarded the revised will to Mr. Wilson for his review on or before February 14, 2018 and directed Mr. Wilson to sign the will in the presence of two witnesses, having those witnesses also sign the will.

Mr. Wilson died on February 16, 2018. The Respondent received news of the death of Mr. Wilson while she was out of the state.

\*\*\*

In March of 2018, the Respondent submitted the 2018 will for probate to the Register of Wills. The Respondent knowingly and falsely stated in her filing that she had been a witness to the signing of the will. The submission of the will for probate was under the penalty of perjury. The Respondent testified that she signed and submitted the will for probate in order to fulfill the last wishes of the decedent, Mr. Wilson.

As a result of the fraudulent submission of the will to probate, the Respondent appointed by the court as The Personal Representative.

The Respondent took the jewelry in the safe and had it appraised for the purpose of the estate. The jewelry was listed on the inventory for the estate.

The Respondent testified that she put the insurance proceeds in the escrow account because the proceeds were to go in part to other matters as stated in the will.

The Respondent was not sure when she learned that Mr. Wilson had paid off all the mortgages on his properties. The Respondent was previously aware that there were $110,000.00 mortgages each on two separate properties. She later learned that the liens for the mortgage was released in January 2018.

The Respondent went to Florida and received an appraisal for the properties located in Florida. The Respondent repaid the estate account for the costs of the funeral.

In the escrow account remained a balance of $60,000. The Respondent took $10,000 to pay taxes.

The Respondent admitted that she knew the will was not validly executed.

After the [Petition to Caveat] was filed, the Respondent hired counsel to represent her before the Orphans['] Court. That counsel filed an answer to the [Petition to Caveat] indicating that the will was not properly witnessed.

The Respondent was replaced as the Personal Representative by David Allen and the 2017 will was submitted for probate, removing the 2018 will.

The Respondent then wrote a letter to bar counsel self-reporting her conduct on August 2, 2018.

The Respondent testified that [she] felt shame, embarrassment, and remorse over her actions. She expressed that she still believes that she can still make a positive contribution to the legal community and that she hopes her actions do not taint the reputations of any of the bar organizations to which she has contributed.

***

**CONCLUSIONS OF LAW**

Based on the findings of facts, the hearing judge concluded, by clear and convincing evidence, that Respondent's drafting of a will "could have resulted in the Respondent receiving up to $85,000 under the terms of the 2017 will and $80,000 under the terms of

11

the 2018 will[]" from Mr. Wilson's life insurance proceeds,[9] and submitting a knowingly falsely attested will before the probate court, violated the following rules of professional conduct.

**Maryland Rule 19-301.8: Conflict of Interest; Current Clients; Specific Rules**

The hearing judge determined Respondent violated Md. Rule 19-301.8(c)[10] when she prepared Mr. Wilson's will that made reference to her designation as the beneficiary of Mr. Wilson's life insurance proceeds. Although the hearing judge acknowledged that, as a matter of law, the life insurance proceeds were not a gift to the Respondent arising under the will, the hearing judge nonetheless determined that actual ownership of the insurance proceeds "does not negate the fact that the Respondent crafted an instrument giving the attorney, or a person related to the attorney any substantial gift." (Internal quotation and citation omitted).

---

[9] The 2017 will also bequeathed to Respondent any of Mr. Wilson's personal property left in Respondent's safe. This property included jewelry, but the hearing judge found that this property passed outside of probate and did not raise any MARPC violations.

[10] Maryland Rule 19-301.8 provides in pertinent part:

**(c)** An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client. For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the attorney or the client maintains a close, familial relationship.

12

The hearing judge rejected Petitioner's contention that the jewelry left in Mr. Wilson's safety deposit box constituted a substantial gift under the rule. The jewelry solely belonged to Respondent regardless of the instruction in the will.[11]

## Maryland Rule 19-301.15: Safekeeping of Property

The hearing judge did not find, by clear and convincing evidence, that Respondent violated Md. Rule 19-301.15(b), (d) within the meaning of the rule.[12]

The hearing judge noted that the 2017 will acknowledged Respondent as the beneficiary of Mr. Wilson's life insurance policy and directed Respondent to use the life insurance proceeds to pay for funeral expenses, costs of estate administration, to pay off any mortgage balances, and to pay gifts to Gary Feliciano and Douglas Haynes. The will allowed Respondent to keep any remaining insurance proceeds along with items left in Wilson's safe. The 2018 fraudulently witnessed will contained identical language to the 2017 will apart from an increased gift to Mr. Feliciano from $5,000 to $10,000.

---

[11] Respondent also testified that she received the contents of the safe, including the jewelry, as inter vivos gifts in 2017.

[12] Maryland Rule 19-301.15 provides, in relevant part:

**(b)** An attorney may deposit the attorney's own funds in a client trust account only as permitted by Rule 19-408(b).

***

**(d)** Upon receiving funds or other property in which a client or third person has an interest, an attorney shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, an attorney shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

On May 7, 2018, Respondent deposited $100,309.78, representing Mr. Wilson's life insurance proceeds, into her attorney trust account. The hearing judge determined that as beneficiary of the life insurance policy, the proceeds belonged to Respondent, not the estate. Respondent testified that she deposited the funds into the trust account to further the final testamentary intent of Mr. Wilson. She also believed the specified tasks in the will would consume most of the life insurance proceeds. Despite Respondent's intent to advance the testamentary wishes of Mr. Wilson, the hearing judge concluded that Respondent should have deposited the insurance proceeds into her personal account, not the attorney trust account or the estate account.

On the other hand, the hearing judge rejected Petitioner's contention that by placing the insurance proceeds in the attorney trust account, Respondent violated her obligation under Md. Rule 19-301.15(d) to promptly notify and deliver the proceeds to Mr. Haynes and Mr. Feliciano. The hearing judge determined that because the proceeds belonged to Respondent, she had no obligation to notify and deliver the proceeds to Mr. Haynes and Mr. Feliciano. The hearing judge also found the deposit of the proceeds reasonable under the circumstances because it provided a safer way to protect the funds than depositing them in her personal account, especially while Mr. Wilson's estate temporarily lacked a personal representative after Respondent's resignation. The hearing judge could not find by clear and convincing evidence that Respondent violated Md. Rule 19-301.15.

**Maryland Rule 19-303.3: Candor Towards the Tribunal**

The hearing judge concluded that the Respondent violated Md. Rule 19-303.3(a)(1)[13] by falsely stating that the will was signed by two or more witnesses in the presence of the testator pursuant Est. & Trusts § 4-102 and submitting the falsely witnessed will under penalty of perjury, pursuant Est. & Trusts § 5-206.

On March 20, 2018, Respondent submitted the 2018 will for probate to the Register of Wills, even though Respondent knew that the will was not witnessed by at least two present witnesses as required by law. Respondent fraudulently represented that she witnessed the will, when she signed the will one month after Mr. Wilson's death. She knowingly and falsely witnessed the will to carry out Mr. Wilson's final wishes.

The hearing judge determined that Respondent only took corrective measures after Mr. Masingo filed the Petition to Caveat. On the other hand, the hearing judge concluded that Respondent received no personal benefit from the falsely attested will. Respondent received $5,000 less under the falsely attested 2018 will than the 2017 will. Corey Blanton and the New Southwest Baptist Church, however, would have received nothing under the 2018 will. The hearing judge thus found Respondent violated Md. Rule 19-303.3(a)(1).

---

[13] Maryland Rule 19-303.3 in pertinent part states:

**(a)** An attorney shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the attorney[.]

**Maryland Rule 19-308.4: Misconduct**

The hearing judge determined that Respondent violated Md. Rule 19-308.4(a), (b), (c), (d).[14]  The hearing judge concluded that Respondent violated Md. Rule 19-308.4(a) when she violated Md. Rule 19-303.3 by making a false statement to a tribunal and submitting a falsely attested will under penalty of perjury.  *See Att'y Grievance Comm'n v. Kaufman*, 466 Md. 404, 419, 220 A.3d 316, 325 (2019) (the attorney's "failure to comply with the other Rules of Professional Conduct" violated Md. Rule 19-308.4(a)).

The hearing judge also concluded that Respondent violated Md. Rule 19-308.4(b) by knowingly submitting a false Form of Petition for Probate under penalty of perjury.  Respondent admitted in her testimony and pleading that she knew the form contained false information.  The hearing judge found Respondent violated Md. Rule 19-308.4(c) by falsely witnessing the will and submitting the will for probate.  Finally, the hearing judge

---

[14] Maryland Rule 19-308.4 reads, in relevant part:

It is professional misconduct for an attorney to:

**(a)** violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

**(b)** commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects;

**(c)** engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

**(d)** engage in conduct that is prejudicial to the administration of justice[.]

16

found that Respondent violated Md. Rule 19-308.4(d) by submitting the Form of Petition for Probate with known false information under threat of perjury per Est. & Trusts § 5-206.

## Maryland Rule 19-408: Commingling of Funds

The hearing judge determined that Respondent did not violate Md. Rule 19-408(a), (b)(1-3)[15] because Respondent placed the insurance proceeds into an attorney trust account to further the client's wishes and not for personal use. Respondent believed only a small

---

[15] Maryland Rule 19-408 reads:

**(a) General Prohibition.** An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 19-404 or permitted to be so deposited by section (b) of this Rule.

**(b) Exceptions.**

(1) An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 19-411(b)(1)(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

(2) An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

(3) Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

17

fraction, after funeral, estate, and mortgage expenses, would remain for her personal benefit. The hearing judge determined that Petitioner failed to meet its burden to show by clear and convincing evidence that Respondent's deposit of the proceeds in the attorney trust account violated Md. Rule 19-408.

## Aggravating and Mitigating Factors

We now address the conclusions of the hearing judge regarding the existence of aggravating and mitigating factors.

In *Att'y Grievance Comm'n v. Shuler*, 443 Md. 494, 117 A.3d 38 (2015), we outlined that the following aggravating factors should be considered:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the M[A]RPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court [ ]; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Id.* at 506-07, 117 A.3d at 46 (alterations in original omitted). The hearing judge found illegal conduct as the sole aggravating factor. Respondent knowingly engaged in illegal conduct when she submitted the falsely attested 2018 will for probate. We agree. Respondent plainly violated the text of both Est. & Trusts § 4-102 and Est. & Trusts § 5-206.

We have identified the following mitigating factors to be considered in issuing an appropriate sanction against those who violate the Rules of Professional Conduct:

18

> [A]bsence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Att'y Grievance Comm'n v. Hodes*, 441 Md. 136, 209, 105 A.3d 533, 576 (2014). The hearing judge found several mitigating factors. The hearing judge identified no prior disciplinary history in Respondent's thirty-five years of practice. The hearing judge found no personal benefit from signing as a false witness. The hearing judge also found no selfish or dishonest motive because Respondent pursued this course of action to further Mr. Wilson's final wishes and stored the insurance proceeds in an attorney trust account instead of a personal account.

Respondent also took immediate steps to correct her misdeeds. She hired counsel who informed the probate court of the 2018 will and openly collaborated with Mr. Allen— the replacement personal representative of Mr. Wilson's estate. Respondent also appeared cooperative and transparent during the disciplinary process. The hearing judge also acknowledged Respondent's good reputation in the legal community, the Woman's Bar Association, the Baltimore City Bar Association, and her experience as founding member and past president of the Maryland Employment Lawyers Association. Respondent took pro bono cases from the Maryland Volunteer Lawyers Service and served on its board. Respondent received awards during her practice, including the Bar Association of Baltimore City Presidential Award, and recognitions from the Maryland State Bar

19

Association, Maryland Volunteer Lawyers Service, and the Maryland Employment Lawyers Association.

The Respondent also called three witnesses who testified to her work ethic and reputation for honesty and integrity. Finally, the hearing judge found Respondent's remorse, embarrassment, and shame as a mitigating factor. The hearing judge concluded, in consideration of the nature of the offense, lack of prior disciplinary action, Respondent's character and reputation, her remorse and cooperation, and special relationship with Mr. Wilson, that Respondent will not likely repeat the conduct.

**STANDARD OF REVIEW**

Although we have "original and complete jurisdiction and conduct[] an independent review of the record[,]" we review the hearing court's findings of fact for clear error. *Att'y Grievance Comm'n v. Whitehead*, 405 Md. 240, 253, 950 A.2d 798, 806 (2008) (internal citations omitted). "The hearing court's findings of fact are *prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous." *Att'y Grievance Comm'n v. Harrington*, 367 Md. 36, 49, 785 A.2d 1260, 1267 (2001) (internal citations and quotation marks omitted). Where parties have filed exceptions, we "shall determine whether the findings of fact have been proven by the requisite standard of proof outlined in Md. Rule [19-727(c)]."[16] *Att'y Grievance Comm'n v. White*, 448 Md. 33, 50, 136 A.3d 819, 829 (2016) (internal quotation marks omitted).

---

[16] Maryland Rule 19-727(c) reads: "Bar Counsel has the burden of proving the averments of the petition by clear and convincing evidence. If the attorney asserts an affirmative defense or a matter of mitigation or extenuation, the attorney has the burden of proving the defense or matter by a preponderance of the evidence."

We have "the ultimate authority to decide whether a lawyer has violated the professional rules." *Harrington*, 367 Md. at 49, 785 A.2d at 1267 (internal citations and quotation marks omitted). We therefore review the hearing court's conclusions of law de novo. *Whitehead*, 405 Md. at 253, 950 A.2d at 806.

## DISCUSSION

Petitioner excepted to the hearing judge's conclusions of law, and Respondent took several exceptions to the hearing judge's findings of fact and conclusions of law. We discuss each party's exceptions in turn.

### I. Exceptions

#### A. *Petitioner's Exception(s)*

Petitioner excepts to the hearing judge's conclusion that Respondent did not violate either subsection (b) or (d) of Md. Rule 19-301.15. Subsection (b) permits an attorney to deposit personal funds in a client trust account only as permitted by exceptions enumerated in Md. Rule 19-408(b).[17] Because the hearing judge found the insurance proceeds constituted personal property, Petitioner contends that the hearing judge should have concluded the deposit of personal funds into the attorney trust account violated Md. Rule 19-303.15(b). According to Petitioner, Respondent's $10,000 withdrawal for a tax

---

[17] Maryland Rule 19-404 generally requires attorneys to deposit client funds held in whole or in part for the client or a third party into an attorney trust account at an approved financial institution. Maryland Rule 19-408(a) builds on this rule and generally prohibits attorneys from commingling their personal funds with a client trust account. Maryland Rule 19-408(b) provides three exceptions to the commingling prohibition. The exceptions do not allow an attorney to deposit personal funds into the attorney trust account for personal use. *See supra* note 15.

21

payment and a $2,090.15 withdrawal to pay attorney's fees in the Petition to Caveat proceedings further illustrates Respondent's understanding that the insurance proceeds personally belonged to her.

We overrule the Petitioner's exception. Maryland Rule 19-408(b)(2) expressly provides that an attorney "may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney[.]" The record shows that Respondent expected to receive the remainder of the insurance proceeds after covering estate expenses. Respondent held a potential claim to the insurance proceeds and reasonably deposited the funds into the attorney trust account.

Petitioner alternatively argued that the hearing judge should have found a violation of Md. Rule 19-303.15(d) because Respondent failed to promptly notify Mr. Haynes and Mr. Feliciano of their specific bequests under the will and failed to promptly deliver the bequests to them. In Petitioner's view, if Respondent reasonably deposited the insurance proceeds in an attorney trust account to execute her duty as personal representative, then Respondent should have also executed her professional responsibility under Md. Rule 19-303.15(d), which requires an attorney to "promptly notify" the recipient of the funds and "deliver promptly" the funds. Petitioner contends that the 2017 will directed Respondent, as personal representative, to pay testamentary gifts of $5,000 and $10,000 to Mr. Feliciano and Mr. Haynes respectively from the life insurance proceeds. Respondent neither promptly notified nor paid Mr. Felicano or Mr. Haynes. Respondent received the life insurance proceeds on April 30, 2018, and then made a combined distribution of $15,000

22

to Mr. Wilson's estate on January 24, 2019, instead of disbursing the funds directly to Mr. Feliciano and Mr. Haynes.

We overrule Petitioner's objection. Respondent did not have a legal obligation to promptly notify Mr. Feliciano and Mr. Haynes of their impending payment when she received the life insurance proceeds in April 2018. *See Att'y Grievance Comm'n v. Smith*, 443 Md. 351, 374, 116 A.3d 977, 990 (2015) (finding the attorney violated Md. Rule 19-301.15(d) when he received settlement funds but failed to notify entitled clients and third parties). Here, Mr. Feliciano and Mr. Haynes lacked a legal interest in the life insurance proceeds. The proceeds passed to Respondent by operation of the life insurance contract. Respondent drafted testamentary language out of moral obligation to Mr. Wilson that directed payment of $5,000 and $10,000 respectively to Mr. Feliciano and Mr. Haynes. For the same reason Respondent was not legally obligated to distribute any of the life insurance proceeds to Mr. Wilson's estate or devisees, Respondent was not legally obligated to promptly notify or deliver the funds to Mr. Feliciano and Mr. Haynes.

Petitioner further argues that if Respondent believed the estate should make these payments, instead of her personally, then Respondent should have placed the entire life insurance payout in Mr. Wilson's estate account. *See Att'y Grievance Comm'n v. Boehm*, 293 Md. 476, 479 n.2, 446 A.2d 52, 53 n.2 (1982) ("It is the obligation of an attorney upon receiving funds representing the assets of an estate to deposit those funds in a separate estate account clearly identifiable by the name of the decedent. Such funds should not be commingled in an escrow account, general, or otherwise."). We overrule this objection. As a matter of legal title, the life insurance proceeds are a non-probate asset. Respondent

23

had no legal obligation to place the funds in an estate account. Respondent commingled her life insurance proceeds with estate funds because she intended to spend the life insurance proceeds furthering Mr. Wilson's final testamentary wishes.

Petitioner also excepts to the hearing judge's finding of the following mitigating factors: (1) "that the Respondent lacked a selfish or dishonest motive as it related to her client," (2) "that the Respondent made good faith efforts to rectify the consequences of [her] misconduct," and (3) "'remorse' for her misconduct." Petitioner acknowledges that Respondent did not personally gain from her false attestation of Mr. Wilson's will, but notes that she did not reveal her false attestation until Mr. Masingo filed the Petition to Caveat. Respondent only expressed remorse after being caught. Thus, according to Petitioner, Respondent's remorse, even while genuine, functions more like "damage control." *See Att'y Grievance Comm'n v. Pennington*, 387 Md. 565, 597, 876 A.2d 642, 661 (2005).

We overrule the Petitioner's exceptions because the hearing judge's findings are not clearly erroneous. Absence of discipline, good faith efforts to remedy improper conduct, admitted acknowledgement of wrongdoing and remorse present long-recognized grounds for mitigation of sanctions. *Att'y Grievance Comm'n v. White*, 448 Md. 33, 73, 136 A.3d 819, 842 (2016).

Petitioner submits two additional aggravating factors: (1) Respondent committed "multiple offenses" based on the hearing judge's findings and (2) Respondent had "substantial experience in the practice of law." We decline to recognize either aggravating factor. Respondent committed one serious offense by submitting a falsely attested will.

24

Respondent's subsequent conduct did not violate any other legal obligations. We also agree with the hearing judge and find Respondent's limited training and experience in estates and trusts counsels against the recognition of substantial experience as an aggravating factor.

### B. Respondent's Exceptions

Respondent excepts to the hearing judge's conclusion of law that Respondent violated Md. Rule 19-301.8(c) because according to Petitioner's own admission, Respondent never requested, encouraged, or solicited Mr. Wilson to become the beneficiary of his life insurance policy. On the contrary, Mr. Wilson named Respondent without her knowledge, and when Respondent learned about it eighteen months later, Mr. Wilson refused to change the designation. Respondent attempted to mitigate any conflicts by drafting language in the will directing her use of funds that otherwise might have passed without restriction.[18]

Respondent also asserts that her close, two-decades long friendship with Mr. Wilson falls under the rule's close family exception. Attorneys may draft wills for their relatives without conflict, and this Court has extended the exemption to non-family members who maintain a "close familial relationship." *Att'y Grievance Comm'n v. Lanocha*, 392 Md. 234, 896 A.2d 996 (2006). Respondent notes that she and Mr. Wilson treated each other

---

[18] The hearing judge and Respondent both acknowledged that the life insurance proceeds pass as *non-probate* assets. *See* Md. Code Ann., Insurance ("Ins.") § 16-212; Est. & Trusts § 16-109(a) ("transfer-on-death resulting from a registration in beneficiary form is effective by reason of the contract . . . and is not testamentary"); *see also Cassiday v. Cassiday*, 256 Md. 5, 259 A.2d 299 (1969) (proceeds pass to beneficiary designated in contract).

like family. Respondent rarely charged Mr. Wilson for legal work and both helped each other beyond the normal attorney-client relationship. Respondent sought to memorialize her friend's final wishes in a will that reduced the amount she would have otherwise received. We sustain Respondent's exception.[19] Respondent received the life insurance proceeds by operation of Mr. Wilson's life insurance contract, not through the will. Maryland Rule 19-301.8(c) imposes a non-waivable obligation on attorneys to avoid drafting *testamentary* instruments that bestow a substantial gift to themselves. Respondent drafted testamentary language that allocated the life insurance proceeds towards Mr. Wilson's estate, but she was under no legal obligation to do so.

## II. Conclusions of Law

### A. *Maryland Rule 19-301.8: Conflict of Interest; Current Clients; Specific Rules*

We disagree with the hearing judge's conclusion that Respondent violated Md. Rule 19-301.8. This rule forbids an attorney from *soliciting* a substantial gift from a client or preparing an instrument *giving* the attorney a substantial gift. The record indicates that Respondent neither *solicited* nor *gave* herself a substantial gift when drafting Mr. Wilson's will.

Mr. Wilson designated Respondent as his life insurance beneficiary without her knowledge. Upon discovery, she implored Mr. Wilson to reconsider, but he refused.

---

[19] We do not reach the question of whether Respondent's close friendship with Mr. Wilson falls under Md. Rule 19-301.8(c) close family exception.

Respondent could not have *solicited* the life insurance proceeds, when Mr. Wilson made the designation without her knowledge and maintained the designation despite her protests.

The designation as life insurance beneficiary also meant Respondent could not have *given* herself a substantial gift under the will. Life insurance proceeds generally constitute non-probate assets. *Karsenty v. Schoukroun*, 406 Md. 469, 488 n.13, 959 A.2d 1147, 1158 n.13 (2008). Non-probate assets pass outside of the will. *See* Allen J. Gibber, *Gibber on Estate Administration* § 2.5 (2018) (defining non-probate assets as "[p]roperty which passes to another person by the terms of the instrument under which it is held or by operation of law"). In short, the life insurance contract, not the will, controls the disposition of the proceeds. Respondent received the life insurance proceeds as non-probate assets. As noted by the hearing judge, Respondent could have "legally kept all the proceeds of the life insurance policy" herself.

Respondent's drafting of testamentary language that allocated the proceeds to Mr. Wilson's estate expenses did not implicate, let alone violate Md. Rule 19-301.8. Respondent drafted this language because she felt a moral obligation to her client. The language did not have any binding effect. More importantly, the testamentary language did not *give* the life insurance proceeds to Respondent because the proceeds independently passed to her outside the probate estate via contract.[20]

---

[20] While Respondent did not violate Md. Rule 19-301.8, she would have violated other rules of professional conduct if she had led Mr. Wilson to believe that the insurance proceeds would be used for the purposes specified in the will she had drafted for him and then, after his death, failed to live up to that representation on the basis that all of those

(continued . . . )

27

### B. Maryland Rule 19-301.15: Safekeeping of Property

We agree with the hearing judge's conclusion that no violation of Md. Rule 19-301.15(b) or Md. Rule 19-301.15(d) occurred.

Maryland Rule 19-301.15(b) allows an attorney to deposit funds that belong both to the client presently and potentially to the attorney. The record shows no violation of Md. Rule 19-301.15(b). Mr. Wilson designated Respondent as his life insurance beneficiary. These funds pass outside of Mr. Wilson's estate to Respondent via contract, so neither Mr. Wilson nor his estate had any claim to the funds. Accordingly, Respondent had no legal obligation to deposit the funds in a trust account. Maryland Rule 19-301.15(b) permits an attorney to deposit their own funds in a client trust account for the client's benefit, even if the attorney retains a potential claim to the funds. The hearing judge found that Respondent placed the insurance proceeds into trust to both safeguard and allocate the funds towards Mr. Wilson's estate. Respondent would only take the remainder. Her actions comply with Md. Rule 10-301.15(b).

Respondent did not violate Md. Rule 19-301.15(d) because the insurance proceeds belonged to Respondent as non-probate property, so as the hearing judge correctly concluded, Respondent had "no legal obligation to notify or give anyone the proceeds of the insurance policy[]". Our case law recognized an affirmative duty to notify and to deliver funds to third parties only when the third parties possess a legal interest in the funds.

---

(. . . continued)
funds belonged solely to her because they passed to her alone outside of probate. *See, e.g.,* Md. Rule 19-308.4(c) ("engage in conduct involving dishonesty, fraud, deceit or misrepresentation[]"); Md. Rule 19-301.1 (Competence).

*Att'y Grievance Comm'n v. Olszewski*, 441 Md. 248, 269, 107 A.3d 1159, 1171 (2015) (the failure to make prompt delivery owed to a client or third person violates Md. Rule 19-301.15(d)); *Att'y Grievance Comm'n v. Brigerman*, 441 Md. 23, 36, 105 A.3d 467, 474-75 (2014) (the attorney violated Md. Rule 19-301.15(d) when they received a check to be disbursed to a client but waited four months until delivery); *Att'y Grievance Comm'n v. Ellison*, 384 Md. 688, 709, 867 A.2d 259, 271 (2005) (discussing the responsibility of attorneys to contact and deliver appropriate funds to a third-party assignee).

Here, Respondent drafted testamentary language that directed payment of $5,000 and $10,000 respectively to Mr. Feliciano and Mr. Haynes from her life insurance proceeds. Respondent included this language because she felt morally obligated to carry out Mr. Wilson's final wishes. The language was only advisory, and it did not give Mr. Feliciano and Mr. Haynes a legal interest in the Respondent's life insurance proceeds. Without a legal interest, Respondent did not violate her professional obligations when she received a check for life insurance proceeds but did not promptly notify or deliver to Mr. Feliciano or Mr. Haynes $5,000 and $10,000 respectively.[21]

### C. *Maryland Rule 19-303.3(a)(1): Candor Towards the Tribunal*

Respondent's submission of a known falsely attested will under threat of perjury to the Register of Wills violated Md. Rule 19-303.3(a)(1). Maryland Rule 19-303.3(a)(1) in pertinent part states, "[a]n attorney shall not knowingly: make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made

---

[21] This moral obligation to carry out Mr. Wilson's wishes could have implicated other rules of professional conduct. *See supra* note 20.

to the tribunal by the attorney[.]" The comments to Md. Rule 19-303.3(a)(1) reject circumstances where the attorney puts the legitimate wishes of the client before candor to the tribunal:

> This Rule sets forth special duties of attorneys as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. An attorney acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force . . . qualified by the advocate's duty of candor to the tribunal . . . the attorney must not allow the tribunal to be misled by false statements of law or fact or evidence that the attorney knows to be false.

Maryland Rule 19-303.3, cmt. [2]; *see Att'y Grievance Comm'n v. Berry*, 437 Md. 152, 186, 85 A.3d 207, 228-29 (2014) (the attorney violated Md. Rule 19-303(a)(1) when he knowingly omitted check numbers and account payments in his representations to the Orphans' Court as personal representative).

An attorney does not need a selfish motive to violate Md. Rule 19-303.3(a)(1). Respondent takes exception to the hearing judge's conclusion that she violated the rule because she did not stand to personally gain from the falsely attested will. Respondent received less from the falsely attested 2018 will than she received under the 2017 will. Respondent also made the false witness attestation to further the last wishes of her client and friend. These good intentions do not absolve Respondent of her dishonest conduct towards the tribunal. As the hearing judge found, Respondent's false attestation of the 2018 will stood to deprive Corey Blanton and the New Southwest Baptist Church of gifts they otherwise would have received under the proper 2017 will. The false document undermined the Orphans' Court's ability to accurately administer Mr. Wilson's estate.

30

Respondent also does not deny her false attestation of the will approximately one month after Respondent's death.

Respondent violated her duty of candor to the tribunal by submitting a known falsely attested will to the Orphans' Court.

### D. Maryland Rule 19-308.4 Misconduct

We conclude that Respondent violated Maryland Rule 19-308.4(a), (b), (c), and (d). In *Att'y Grievance Comm'n v. Foltz*, we restated the well-established principle that an attorney violates Maryland Rule 19-308.4(a) when she or he violates other professional rules. *Foltz*, 411 Md. 359, 395, 983 A.2d 434, 456 (2009). Respondent's violation of Md. Rule 19-303(a) means a concurrent violation of Md. Rule 19-308.4(a).

In *Att'y Grievance Comm'n v. Woolery*, we concluded that making false statements to a tribunal violates Md. Rule 19-308.4(b) ("commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects[]") and violates Md. Rule 19-308.4(c) ("engage in conduct involving dishonesty, fraud, deceit or misrepresentation"). *Woolery*, 462 Md. 209, 250, 198 A.3d 835, 859 (2018). We also concluded in the same case that the attorney's deceit violated Md. Rule 19-308.4(d) ("engage in conduct that is prejudicial to administration of justice[]"). *Id.* at 250, 198 A.3d at 859.

Here, Respondent made knowingly false statements to the Orphans' Court by submitting Mr. Wilson's will without the proper number of attesting witnesses. Respondent made this misrepresentation under penalty of perjury. Respondent's criminal

31

and fraudulent submission of an improperly attested will to probate court constitute violations of Md. Rule 19-308.4(a), (b), (c), and (d).

### E. Maryland Rule 19-408 Commingling of Funds

Respondent did not violate Md. Rule 19-408 because she commingled funds to presently protect Mr. Wilson's assets and potentially withdraw any remaining funds. Petitioner failed to meet its burden of proof that Respondent's actions violated the rule. The operative language from Md. Rule 19-408 in this case comes from (b)(2):

> An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

Maryland Rule 19-408(b)(2). The reasoning parallels the analysis of Md. Rule 19-301.15(b) above. The insurance proceeds constituted non-probate assets, which belonged to Respondent. The rule allows commingling when an attorney intends to use personal funds for the client's benefit. Respondent commingled the insurance proceeds because she genuinely intended to spend the balance of the funds to benefit her client's estate. Petitioner did not meet its burden to show that commingling of the funds in a trust account violated Md. Rule 19-408.

### SANCTION

It is well-established that the purpose of sanctions in attorney disciplinary proceedings is not to punish the attorney. *Att'y Grievance Comm'n v. Williams*, 446 Md. 355, 375, 132 A.3d 232, 244 (2016). We are motivated by our obligation to protect

32

members of the public from attorneys who have demonstrated that they are unfit for the practice of law. Under this approach, we seek to impose sanctions that are "commensurate with the nature and gravity of the violations and the intent with which they were committed," while considering the unique circumstances of each case and any aggravating or mitigating factors. *Id.* at 376, 132 A.3d at 244 (quoting *Att'y Grievance Comm'n v. Khandpur*, 421 Md. 1, 18, 25 A.3d 165, 175 (2011)). When deciding the proper sanction for an errant attorney's conduct, ". . . we do not simply tote up the number of possible violations and aggravating factors to arrive at an appropriate sanction." *Att'y Grievance Comm'n v. Ndi*, 459 Md. 42, 65, 184 A.3d 25, 38 (2018).

We find one aggravating factor in support of our conclusion: illegal conduct. Respondent's act of perjury by submitting a falsely attested will to the Register of Wills illustrates the aggravating factor of illegal conduct. Attorneys, as officers of the court, must exhibit unwavering honesty and candor before the tribunal. The knowingly false submission of an affidavit to the court constitutes the crime of perjury. We do not find the related aggravating factor of dishonest or selfish motive. While Respondent acted dishonestly to mislead the court into believing a validly attested will, Respondent did not act with a personal or selfish motive. Respondent did not have anything to gain from the 2018 will and received less under the new will.

We find the following mitigating factors: (1) absence of a prior disciplinary record, (2) full and free disclosure to the disciplinary board and a cooperative attitude towards proceedings, (3) high character and reputation, (4) unlikely chance of repetitive conduct.

33

Respondent's thirty-five-year career contains no other disciplinary matters. Her record, instead, reveals multiple commendations and awards in the service of her clients. Respondent's record of client service and dedication explains why the misconduct represents an aberration, not a reflection of her character.

Respondent also self-reported her conduct in a letter to the Attorney Grievance Commission and fully cooperated with Petitioner and the replacement personal representative during probate proceedings. Petitioner correctly notes that Respondent self-reported her conduct only after Mr. Masingo initiated Petition to Caveat proceedings. Respondent voluntarily shared her transgressions with the Attorney Grievance Commission instead of maintaining the charade of the falsely attested will or hoping the Orphans' Court would not find or report her violation. Respondent cooperated fully throughout the process and worked with Mr. Allen, her replacement as personal representative, to ensure resolution of Mr. Wilson's estate administration.

Respondent presented several character witnesses that remarked on her high character, sterling reputation and unwavering commitment to her clients. We agree that the hearing judge could weigh such testimony in assessing Respondent's character and reputation as a mitigating factor.

Finally, the circumstances of this case show the unlikely possibility of repetition of conduct. Mr. Wilson and Respondent were close friends. Lawyers must exhibit zealous advocacy for their clients but never at the expense of the law or reputation of the profession. Respondent's close relationship with Mr. Wilson clouded her judgment and caused her to

34

place her close friend's final wishes above her duty to Maryland law and the profession. It is unlikely Respondent will reproduce this behavior in the future.

We find indefinite suspension with a right to reapply in six months the appropriate sanction, given the serious nature of her deceit before a tribunal. We do not impose disbarment because of Respondent's genuine attempt to further the client's wishes, absence of prior discipline and high moral character.

In similar cases involving a personal representative's improper estate administration, we have found indefinite suspension to be the appropriate sanction. In *Att'y Grievance Comm'n v. Kendrick*, 403 Md. 489, 943 A.2d 1173 (2008), we issued an indefinite suspension with a minimum thirty day waiting period when an attorney, acting as personal representative, failed to handle the administration of an estate in a reasonably diligent manner. *Id.* at 522, 943 A.2d at 1191-92. The attorney failed to file a proper administration account, failed to follow the guidance of a court auditor and did not timely file documents with the register of wills. *Id.* at 519, 943 A.2d at 1190. Most importantly, the hearing judge found, and we agreed, that the attorney's misconduct stemmed from incompetence in probate matters, not greed or dishonesty. *Id.* at 522, 943 A.2d at 1192.

We adopted a totality of circumstances approach in *Kendrick* and we do so here. Similar to *Kendrick*, Respondent did not violate the rules to enrich herself, but to execute the final wishes of her client. Respondent tried to persuade her "headstrong" client not to name her as his life insurance beneficiary, but when he refused, she used her position as his attorney to ensure the proceeds served his administration and devisees before personal

35

enrichment. Respondent exhibited a duty of loyalty to her client and his estate, which counsels against disbarment here.[22]

We also note that Respondent's dishonesty before a tribunal represents a serious violation of her professional obligations. In the past we have imposed a mandatory waiting period of six months when part of the attorney's discipline stems from dishonesty. *Att'y Grievance Comm'n v. Cohen*, 361 Md. 161, 179, 760 A.2d 706, 716 (2000) (a neglect of client matters, failure to properly communicate with clients, a lack of competence and false statements during disciplinary investigation warranted an indefinite suspension with permission to reapply in six months). Indefinite suspension with a waiting period of six months balances the mitigating factors present here with the serious violation of dishonesty before a tribunal.

The comparably more egregious conduct of a personal representative in *Att'y Grievance Comm'n v. Sullivan*, 369 Md. 650, 801 A.2d 1077 (2002) that warranted

---

[22] This Court has issued indefinite suspensions with a mandatory waiting period in similar cases. *See Att'y Grievance Comm'n v. DiCicco*, 369 Md. 662, 688, 802 A.2d 1014, 1028 (2002) (imposing an indefinite suspension with the right to reapply in ninety days for violations of MARPC 19-301.15(a), (c) and 19-308.4(a) where attorney negligently administered trust accounts, but showed absence of fraudulent intent, possessed no previous disciplinary problems in thirty-eight years of practice, and the clients did not suffer a financial loss); *Att'y Grievance Comm'n v. Cohen*, 361 Md. 161, 178, 760 A.2d 706, 716 (2000) (a neglect of client matters, failure to properly communicate with clients, a lack of competence and false statements during disciplinary investigation warranted an indefinite suspension with right to reapply in six months); *Att'y Grievance Comm'n v. Adams*, 349 Md. 86, 98–99, 706 A.2d 1080, 1086 (1998) (imposing an indefinite suspension with the right to reapply in 30 days for violations of MARPC 19-301.15 and Md. Rule 16–604 where the attorney's conduct was a negligent, unintentional, misappropriation, but the attorney lacked prior discipline and he attempted in good faith to help his friend).

36

disbarment further demonstrates why an indefinite suspension with a six-month waiting period is appropriate in this case. In *Sullivan*, we disbarred an attorney who took over $50,000 from his client's estate without approval of either the estate or the Orphans' Court. *Id.* at 655-56, 801 A.2d at 1080. We found the attorney acted selfishly in enriching himself without any mitigating circumstances. Here, Respondent did not try to steal from her client. Her actions came at her own expense. The lack of mitigating circumstances also clearly distinguishes the type of sanction imposed in *Sullivan* from this case.

Petitioner contends that disbarment presents the appropriate sanction considering *Att'y Grievance Comm'n of Maryland v. Coppola*, 419 Md. 370, 19 A.3d 431 (2011). In *Coppola* we disbarred an attorney who forged his unconscious client's signature on a will, directed his employees to falsely attest to the will, and submitted a deed predicated on the falsely attested will in the county hall of records. *Id.* at 411, 19 A.3d at 455. The Court found disbarment appropriate because of intentional dishonesty in violation of Rule 8.4(c) without "compelling extenuating circumstances[]" along the lines of *Att'y Grievance v. Vanderlinde*, 364 Md. 376, 397, 773 A.2d 463, 475 (2001). This Court concluded "the great strength of our profession lies in the integrity with which we act and the honor that we bring to our work. Attorneys are not permitted to discard their ethical obligations when it becomes difficult or stressful to maintain them." *Coppola*, 419 Md. at 411, 19 A.3d at 455.

The distinct circumstances here coupled with the mitigating factors discussed above warrant a less stringent sanction than imposed in *Coppola*. Respondent, like the attorney in *Coppola*, let her friendship with and fealty to her client cloud her professional judgment

37

and ethical obligations. Unlike the attorney in *Coppola*, Respondent did not make the unethical decision to forge her client's signatures in a moment of haste and pressure before her client's children. Respondent spoke with Mr. Wilson multiple times about his testamentary wishes and only discovered his will missing one signature after his unexpected death. Also, unlike the attorney in *Coppola*, Respondent did not involve her colleagues in perpetration of the falsely attested will. The attorney in *Coppola* also specialized in estates and trusts, unlike Respondent who specialized in employment law. Finally, other mitigating factors such as Respondent's high moral character and unlikeliness to repeat the misconduct based on her particularly close relationship with Mr. Wilson further distinguishes the circumstances of *Coppola* from the circumstances here.

Respondent seriously breached her professional obligations by submitting a will with a knowingly false witness attestation. This misconduct occurred because of Respondent's misguided intent to further the last wishes of her client. She acted without selfish motive and took action to try and mitigate the potential conflict of interest and protect the interests of Mr. Wilson's estate and legatees. Her conduct comes after a long and respected career in the legal profession and the circumstances suggest an unlikely repetition of the misconduct. Respondent's conduct warrants an indefinite suspension, with the right to apply for reinstatement no sooner than six months after entry of this judgment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709 (d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MARY THERESA KEATING.**

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 46

September Term, 2019
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

MARY THERESA KEATING
_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.
_____

Concurring Opinion by Watts, J.
_____

Filed: December 23, 2020

Respectfully, I concur with the sanction imposed by the Majority, namely, an indefinite suspension with the right to apply for reinstatement no sooner than six months, and I join the majority opinion insofar as to the sanction imposed. From my perspective, this case does not involve the type of intentional dishonesty that this Court's holding in Attorney Grievance Comm'n v. Vanderlinde, 364 Md. 376, 418-19, 773 A.2d 463, 488 (2001), was intended to prevent. I am convinced that in signing the will as a witness after Keith Wilson's death, Mary Theresa Keating, Respondent, intended to give effect to what she believed were her client's last wishes and was not intentionally seeking personal benefit of any sort. For this reason, in my view, although certainly better judgment should have prevailed, the type of intentional dishonesty addressed by Vanderlinde is not implicated and a departure from the sanction normally required for such dishonesty, *i.e.*, disbarment, is warranted.